UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| VLADLENA FUNK and EMANUEL ZELTSER, | : | |
| | : | C.A. No. __-____ |
| Plaintiffs, | : | |
| | : | ECF CASE |
| - against- | : | |
| | : | Supreme Court, Kings County |
| BELNEFTEKHIM a/k/a CONCERN | : | Index No: 501907/2012 |
| BELNEFTEKHIM and BELNEFTEKHIM | : | |
| USA, INC., | : | **NOTICE OF REMOVAL** |
| | : | |
| Defendants. | : | |

PLEASE TAKE NOTICE that Defendants Belneftekhim and Belneftekhim USA, Inc. ("Defendants"), by their attorneys, White & Case LLP, hereby remove this action from the Supreme Court of the State of New York, Kings County, to the United States District Court for the Eastern District of New York.  In filing this Notice of Removal, Defendants do not waive, and expressly reserve, any and all rights, claims and defenses they may have.

1.      Plaintiffs commenced this action by filing a Summons and Complaint in the Supreme Court of the State of New York, Kings County, on July 12, 2012, under Index No. 501907/2012.

## FIRST GROUND FOR REMOVAL
## (BY BELNEFTEKHIM)

2.      The Republic of Belarus is a foreign state within the meaning of 28 U.S.C. § 1603(a).

3.      Belneftekhim is an agency or instrumentality of the Republic of Belarus, within the meaning of 28 U.S.C. § 1603(b), in that (a) Belneftekhim is an entity which is a separate legal person, (b) Belneftekhim is an organ of the Republic of Belarus and/or a majority of

Belneftekhim's shares or other ownership interests are owned by the Republic of Belarus and (c) Belneftekhim is neither a citizen of a State of the United States nor created under the laws of any third country.  Belneftekhim is therefore a foreign state within the meaning of 28 U.S.C. §§ 1603(a) and 1441(d).

4.       This action is therefore removed, pursuant to 28 U.S.C. § 1441(d), to the U.S. District Court for the Eastern District of New York, which is the district and division embracing Kings County, the place where the action is pending.

## SECOND GROUND FOR REMOVAL
## (BY BELNEFTEKHIM USA, INC.)

5.       Belneftekhim USA, Inc. repeats and realleges paragraphs 2 through 4 as if fully set forth herein.

6.       The claims against Belneftekhim USA, Inc. are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7.       This action is therefore removed, pursuant to 28 U.S.C. § 1441(d), to the U.S. District Court for the Eastern District of New York, which is the district and division embracing Kings County, the place where the action is pending.

## THIRD GROUND FOR REMOVAL
## (BY BELNEFTEKHIM USA, INC.)

8.       Upon information and belief, Plaintiffs are citizens of Florida and/or New York.

9.       Belneftekhim USA, Inc. is a corporation organized under the laws of Massachusetts and has its principal place of business in Massachusetts.  Belneftekhim USA is therefore a citizen of Massachusetts.

10.       In their Complaint, Plaintiffs seek damages in the amount of $140 million.  The amount in controversy therefore exceeds the sum or value of $75,000, exclusive of interest and costs.

11.    This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a).

12.    This action is therefore removed, pursuant to 28 U.S.C. § 1441(a), to the U.S.

District Court for the Eastern District of New York, which is the district and division embracing

Kings County, the place where the action is pending.

Dated: January 16, 2014
       New York, New York

                                   Respectfully submitted,

                                   WHITE & CASE LLP

                                   By:___/s/  *Kenneth A. Caruso*_____
                                        Kenneth A. Caruso
                                        1155 Avenue of the Americas
                                        New York, New York 10036-2787
                                        Tel: (212) 819-8200
                                        Facsimile:  (212) 354-8113
                                        Email: kcaruso@whitecase.com

                                        *Attorneys for Defendants*


TO:    Clerk of the United States District Court
       For the Eastern District of New York
       U.S. Courthouse
       225 Cadman Plaza East
       Brooklyn, NY 11201

       Kings County Clerk of Supreme Court
       360 Adams Street
       Room 189
       Brooklyn, NY 11201

       Emanuel Zeltser, Esq.
       119 West 72nd Street, #229
       New York, NY 10023

       *Attorney for Plaintiffs*

Attachments to Notice of Removal

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF KINGS**

**VLADLENA FUNK and EMANUEL ZELTSER,**

*Plaintiffs,*

- v -

**Belneftekhim  a/k/a Concern Belneftekhim, and Belneftekhim USA, Inc.,**

*Defendants.*

INDEX No. _____

**SUMMONS**

TO:   **Belneftekhim  a/k/a Concern Belneftekhim**
      **Belneftekhim USA, Inc.**
=======================================
      *To the above named Defendants:*

      YOU ARE HEREBY SUMMONED to appear in this Supreme Court of the State of New York, County of Kings, New York at 360 Adams St, Brooklyn, NY 11201, within twenty (20) days of service of the Summons, exclusive of the day of service, or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York, and to answer this Summons and the allegations set forth in the annexed Complaint with the Clerk, and serve a true copy thereof upon the Attorney for Plaintiff. If you fail to appear and answer the within Summons and Complaint, a judgment will be entered against you by default for the relief demanded in the Complaint together with interest, costs and disbursements of this action.

      DATED:     June 26, 2012

                            Sternik & Zeltser

               by:     */c/ Emanuel Zeltser*
                          Emanuel Zeltser, Esq.
                          119 West 72nd Street # 229
                          New York, NY 10023
                          T/F: 212-656-1810
                          email: ez@russianlaw.org

                         Attorneys for Plaintiffs
                         Vladlena Funk and Emanuel Zeltser

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

**VLADLENA FUNK and EMANUEL ZELTSER,**

*Plaintiffs,*

- v -

**Belneftekhim  a/k/a Concern Belneftekhim, and
Belneftekhim USA, Inc.,**

*Defendants.*

---

INDEX No. _____

# VERIFIED COMPLAINT

---

Plaintiffs, Emanuel Zeltser and Vladlena Funk, complaining of Defendants, Belneftekhim

(a/k/a Concern Belneftekhim), and Belneftekhim USA, Inc., respectfully allege, upon personal

knowledge as to themselves and upon information and belief as to all other matters, as follows:

## INTRODUCTION

1.      This action relates to the widely reported kidnaping, unlawful detention and torture of

American citizens, Emanuel Zeltser and Vladena Funk, by the Belarusian KGB at the instigation

of the Defendants and at the direction of Belarusian dictator, Alexander Lukashenka, in a failed

criminal effort designed by the Defendants and the Byelorussian government to force hand of the

United States Government to lift economic sanctions imposed against the Defendants.

2.      Plaintiffs seek to recover damages for personal injuries, business losses, conversion, assault

and battery, false imprisonment and torture, and other torts committed by the Byelorussian

government and the KGB, at the instigation of the Defendants, and with their active participation,

aiding and abetting.  The sadistic acts of violence committed by the KGB with active participation

of the Defendants against Mr. Zeltser and Ms. Funk shock the conscience, grossly deviate from

acceptable norms of human behavior, and violate the law of nations and international law of human

rights.  The KGB agents drugged and abducted Mr. Zeltser and Ms. Funk from a restaurant in

London, transported them to a Belarusian KGB detention facility against their will, savagely beat

them repeatedly, starved them, deprived them of sleep, denied them access to life-sustaining medications and medical treatment, and held them hostage on bogus charges of "spying" - - despite having been transported to Belarus against their will.

3.      The Defendants, acted in concert with the Byelorussian KGB in their efforts to compel the U.S. to lift sanctions in exchange for the release of Mr. Zeltser and Ms. Funk.  Instead, the kidnapping, systematic torture, and illegal detention of Mr. Zeltser and Ms. Funk as hostages resulted in worldwide outrage, massive international publicity, and threats of increased sanctions from senior-ranking Members of Congress, Secretary of State Hillary Clinton, and other international leaders.  The increased pressure forced Lukashenka to release Mr. Zeltser and Ms. Funk after holding both in captivity for 16 months and 12 months respectively.

THE PARTIES

Plaintiffs

4.      **Emanuel Zeltser ("Zeltser")** is a New York attorney residing in the State of New York. While visiting London on business in March 2008, Zeltser was drugged and forcibly abducted by Belarusian KGB operatives acting on behalf of Defendants, Belneftekhim Belarus, Belneftekhim USA, and Alexander Lukashenka.  Zeltser was secretly renditioned to Belarus aboard a private jet, where he was unlawfully detained, systematically tortured, threatened, falsely accused of espionage, emotionally degraded and dehumanized, and held as a political hostage for 473 days until released in response to a continuous wave of worldwide outrage and threat of increased economic and political sanctions.

5.      **Vladlena Funk ("Funk")** is a resident of New York and Florida and at all relevant times was Mr. Zeltser's legal assistant and business consultant , and served as a freelance reporter for MT~NewsWire™.   In March 2008, Ms. Funk accompanied Mr. Zeltser to London on business, where she was drugged and abducted by Belarusian KGB operatives acting on behalf of Defendants, Belneftekhim Belarus and Belneftekhim USA.  Funk was secretly renditioned to Belarus aboard a

2

private jet, where she was unlawfully detained, systematically tortured, threatened, falsely accused of espionage, emotionally degraded and dehumanized, and held hostage for 373 days until released in response to a continuous wave of worldwide outrage and threat of increased economic and political sanctions.

Defendants

6.    **Belneftekhim** (a.k.a. Belarusian State Concern for Oil and Chemistry; a.k.a. Belarusian State Petroleum and Chemicals Concern; a.k.a. Belneftekhim Concern; a.k.a. Concern Belneftekhim) is a commercial petrochemical concern having an office in the US at 13 Branch St., # 213, Methuen, MA 01844.  According to Belneftekhim's English-language website (www.belneftekhim.by/en/): "Belneftekhim was created in April 1997 and comprises enterprises and organizations for crude oil production, refining and transportation, oil product sales, chemistry and petrochemistry, several scientific, research and development, construction, repair and commissioning organizations, as well as a developed distribution network in foreign markets. Belneftekhim manufactures over 500 kinds of petrochemical and chemical products.

7.    Belneftekhim is engaged in international commerce, importing its products to over 90 countries and maintains representative offices in a number of countries, including Belarus, Russia, Germany, Ukraine, India, Latvia, China , Latvia, Turkey and the United States.

8.    Belneftekhim, which produces petrochemical products, is on information and belief the largest commercial enterprise in Belarus and was the largest exporter of Belarusian products to the United States prior to the imposition of U.S. sanctions upon Belneftekhim pursuant to Executive Order 13405, issued June 19, 2006.  Executive Order 13405 targets persons, including Lukashenka and members of his administration and Belarusian media, who undermine the Belarusian democratic processes or engage in political repression or public corruption.  Sixteen senior Belarusian officials, including Lukashenka, have already been designated under the order.

9.    Belneftekhim is tightly controlled by illegally elected president of Belarus, Alexander

Lukashenka and members of his clique. Lukashenka's control over Belneftekhim Belarus and Belneftekhim USA is the basis for the designation of Belneftekhim Belarus and Belneftekhim USA as persons "who undermine the Belarusian democratic processes or engage in political repression or public corruption".

10.    **Belneftekhim USA,** at all relevant times was a U.S. corporation organized under the laws of the Commonwealth of Massachusetts (Identification No. 000920912) having a principal place of business located at 13 Branch St., # 213, Methuen, MA 01844, and is affiliated with Belneftekhim Belarus. On November 13, 2007, the United States Treasury Department, in close consultation with the United States State Department, froze the assets of Belneftekhim Belarus and its U.S. representative office, Belneftekhim USA.

Relevant Nonparties ("The KGB Parties")

11.    **Alexander Lukashenka ("Lukashenka")** is the illegally elected president/dictator of Belarus, a former Soviet republic, and is widely known and criticized for his oppressive rule of Belarus and the use of detention and torture to suppress political dissent. Lukashenka regularly imprisons political opponents, members of the media, and their families, in order to maintain his totalitarian control of Belarus. Lukashenka has been referred to as "the last remaining true dictator in the heart of Europe" by former Secretary of State Condolezza Rice, and is commonly referred to in the media as Europe's last dictator. The U.S. Department of State notes that Lukashenka has "illegally extended his presidency" by "fraudulent referendum."

12.    On June 19, 2006, President George W. Bush issued Executive Order 13405, imposing sanctions against Lukashenka and other members of the corrupt Belarusian government, for "undermining democratic process and constitut[ing] an unusual and extraordinary threat to the national security and foreign policy of the United States". The U.S.-imposed sanctions include, inter alia, blocking funds and property located in the United States, belonging to Lukashenka and other members of the government of Belarus, including freezing approximately $2 billion of the assets of

Belneftechim Belarus and Belneftechim USA, the Belarusian petrochemical monopoly owned by and controlled by the government of Belarus, Lukashenka, and other members the Belarusian government.

13.    The U.S. sanctions imposed against Belneftechim have placed a significant strain on the Belarusian economy and caused grave embarrassment to Lukashenka and his regime. In response to the sanctions, Lukashenka has openly sworn that he would seek revenge against the U.S. and even publicly announced that he would block "any property which [U.S. president] George Bush and [U.S. Secretary of State] Condolezza Rice may have in Belarus". He also ordered U.S. Ambassador Karen Stewart to leave Belarus on March 12, 2008, and directed severe cuts in the U.S. Embassy staff in Belarus.

14.    Lukashenka, partly at the behest of the Defendants ordered the kidnaping, torture and detention of Mr. Zeltser and Ms. Funk to use their capture as a bargaining chip to persuade the U.S. government to lift the economic sanctions imposed against Belneftekhim Belarus and Belneftekhim USA and remove the freeze on all their assets in the United States. The Defendants actively aided, abetted and participated in these crimes.

15.    Despite the U.S.-imposed sanctions against Lukashenka, Belneftekhim Belarus and Belneftekhim USA, Belneftekhim Belarus and Belneftekhim USA have by license or otherwise continued to engage in commercial activity in the United States, and commercial activity outside the United States having a substantial and direct effect in the United States, including, inter alia, the kidnapping, torture and detention of American citizens to further the commercial interests of Belneftekhim.

16.    **Vladimir Makey ("Makey")**, is at all relevant times a resident of Belarus and chief of the corrupt Lukashenka regime. Makey committed, directed, aided and abetted, and acted in concert with the other named The KGB Parties in committing the wrongs alleged herein.

17.    **Sergey Vorobyev ("Vorobyev")** was at all relevant times a resident of Belarus, a KGB

officer under the corrupt Lukashenka regime. Vorobyev committed, directed, aided and abetted, and acted in concert with the Defendants in committing the wrongs alleged herein.

18.    **Igor Shunevich ("Shunevich")** was at all relevant times a resident of Belarus and a KGB officer under the corrupt Lukashenka regime. Shunevich committed, directed, aided and abetted, and acted in concert with the Defendants in committing the wrongs alleged herein.

19.    **Maksim Mardashou ("Mardashou")** was at all relevant times a resident of Belarus and Massachusetts and an officer of Belneftekhim. Mardashou committed, directed, aided and abetted, and acted in concert with the Defendants in committing the wrongs alleged herein.

BACKGROUND FACTS

20.    On March 10, 2008, Mr. Zeltser and Ms. Funk traveled to London in connection with Mr. Zeltser's legal representation of private clients. On March 11, Mr. Zeltser and Ms. Funk met with Boris Berezovsky, an opponent of Mr. Zeltser's clients, at a London café for the purpose of resolving a dispute concerning Mr. Zeltser's clients. Mr. Berezovsky was accompanied by a group of KGB agents that he introduced as his "associates."

21.    During the meeting, Berezovsky and/or one or more of the KGB agents placed in the drinks of Mr. Zeltser and Ms. Funk a sedative, believed to be benzodiazepine-based, in dozes sufficient to make Mr. Zeltser and Ms. Funk unable to exercise their free will.

22.    Once Mr. Zeltser and Ms. Funk were sedated, the KGB agents ushered Mr. Zeltser and Ms. Funk to Berezovsky's car, drove them to a private airport, and placed them on board Berezovsky's private jet - - en route to Minsk, Belarus.

23.    Berezovsky's private jet, with Mr. Zeltser and Ms. Funk on board, landed in Minsk on March 12, 2008, at approximately 4:30 am. Awaiting its arrival were agents of Lukashenka's personal security force, supervised by Makey, the chief of Lukashenka's administration, who immediately detained Mr. Zeltser and Ms. Funk. Mr. Zeltser and Ms. Funk were handcuffed and transported to a KGB detention facility. Both were strip-searched, beaten, and placed in solitary

confinement.

24.    After their arrival at the KGB detention center, Mr. Makey personally conducted the initial "interrogation" of Mr. Zeltser and Ms. Funk. Mr. Makey informed Mr. Zeltser and Ms. Funk that their abduction and rendition from London to Belarus was effected by KGB officers operating in London in the national interests of Belarus for two distinct reasons. First, it was in retaliation to the economic sanctions imposed by the U.S. Second, it was done at the request of Berezovsky, a close personal friend of president Lukashenka, who was involved in a dispute with Mr. Zeltser's clients concerning the ownership of substantial corporate and real estate holdings.

25.    Makey initially sought to obtain "confessions" from Mr. Zeltser and Ms. Funk. He advised that if they both confess that they came to Minsk voluntarily as "spies" and sign sworn statements adverse to the interests of Mr. Zeltser's clients, they would be released and "deported."

26.    However, when Mr. Zeltser and Ms. Funk requested the presence of consular representatives of the U.S. and Russian Federation, respectively, their requests were swiftly and categorically declined by Makey. Likewise denied were Mr. Zeltser's and Ms. Funk's requests to be provided with an attorney.

27.    During the next several days, both Mr. Zeltser and Ms. Funk were subjected to torture. They were, inter alia, repeatedly dragged from their cells to basement interrogation rooms for lengthy "interrogation" sessions comprised of severe physical beatings designed to coerce their confessions and credible death threats against them and their family members residing in Eastern Europe by armed KGB agents. Ms. Funk was threatened with sexual assault and gang rape. Between sessions, they were deprived of food and sleep.

28.    Ms. Funk was separately advised that in the absence of her sworn confession, the KGB would continue to detain her to coerce the United States to lift the economic sanctions against Belarus and Belneftekhim. It was explained to her that KGB investigators could easily manufacture a criminal case against her and Mr. Zeltser, which would undoubtedly be approved by a Belarusian

7

court.

29.     From the outset, and throughout their unlawful KGB detention, both Mr. Zeltser and Ms.

Funk were subject to torture and harsh and inhumane conditions.  Aside from repeated beatings

designed to compel confessions, they were deprived of basic, life-sustaining necessities including

food, water, sleep and medical attention.  Indeed, the bedding in Mr. Zeltser's cell was removed

altogether.

30.     Mr. Zeltser was also denied access to the critical, physician-prescribed medications he

arrived with for treatment of heart disease, diabetes, and severe arthritis.  Combined with inhumane

prison conditions, this caused his health to rapidly deteriorate and placed him at risk of imminent

death.

31.     On March 20, 2008, U.S. Senator Charles E. Schumer alerted the U.S. Department of State

of the bogus nature of the abduction of Mr. Zeltser and the atrocious conditions of his detention, and

requested that the State Department "do all in its power to see that Mr. Zeltser's serious medical

conditions are attended to, and that his detention matter is brought to a quick, successful

conclusion."

32.     Yielding to repeated demands of the United States and international media pressure, on

March 27, 2008 (15 days after Mr. Zeltser's and Ms. Funk's detention), Belarusian authorities

permitted U.S. and Russian consular representatives to visit Mr. Zeltser and Ms. Funk in the KGB

detention center and further permitted visits by Belarusian state-employed lawyer, Dmitry

Goryachko, who received special KGB clearance only after signing a statement advising him that

disclosure of any information concerning the case of Mr. Zeltser and  Ms. Funk would result in his

criminal prosecution.

33.     On April 12, 2008, pursuant to the directives of Vorobyev, Mr. Zeltser was involuntarily

transferred to a state psychiatric hospital for "psychological testing" - - which is a common tactic

used by the KGB to demoralize political prisoners and amounted to further physical and

psychological torture of Mr. Zeltser. Vorobyev's directives also provided for Ms. Funk's transfer

to the same psychiatric facility; however, following a wave of international protests and press

indignation over Mr. Zeltser's transfer for the obvious purpose of coercing a confession, the KGB

retracted its plans to confine Ms. Funk to the psychiatric hospital.

34.    On April 14, 2008, Tom Casey, Deputy Spokesman of the U.S. Department of State, released

Statement No. 2008/280, entitled "Belarus: Access to Imprisoned U.S. Citizen", which provided:

> "The United States is concerned about the welfare of American citizen
> Emanuel Zeltser, imprisoned in Belarus. Mr. Zeltser suffers from serious
> pre-existing health conditions and requires daily medications. Despite
> repeated requests for consular access to Mr. Zeltser, we have been permitted
> only one visit on March 27. The Government of Belarus failed to provide
> timely notification of his arrest, information about his medical condition, and
> did not inform the U.S. Embassy of his recent transfer to a state psychiatric
> hospital. Consular access in Belarus has long been a concern for the United
> States. We urge the Government of Belarus to comply with their international
> legal obligations and provide immediate and regular consular access to
> Emanuel Zeltser."

35.    On April 23, 2008, Jonathan Moore, U.S. Chargé d'Affaires in Belarus, was summoned to

the Belarusian Ministry of Foreign Affairs:

> "At the meeting, the Chargé was told that the Ministry "requested" that the
> Embassy provide a list of the five U.S. diplomats who would remain in
> Belarus on April 30. Mr. Moore protested this news, and noted that there
> would be grave consequences as a result of this unprecedented and
> unwarranted step by the Belarusian authorities. Mr. Moore also protested the
> continued lack of access to American citizen Emanuel Zeltser, whom the
> Embassy has not been able to visit since March 27, and expressed concerns
> about the state of Mr. Zeltser's health."

36.    On that same day, the New York City Bar Association sent a strongly worded letter to

Lukashenka condemning KGB abuse of Mr. Zeltser and Ms. Funk and demanding their immediate

release. The Bar Association Letter, signed by its president Barry Kamins, states:

> "I write ... to express our concern over the continued detention and physical
> mistreatment of Mr. Emanuel Zeltser, an American attorney, and the
> detention of his assistant, Ms. Vladlena Funk, a permanent resident of the
> United States, in Belarus."

*** 

9

"It has ... been reported, to the Association's great concern, that Mr. Zeltser has suffered severe physical and mental mistreatment while in detention. It has been reported that since being detained four weeks ago, he has been repeatedly subject to beatings in jail, including direct blows to the head ... Most recently, Mr. Zeltser has reportedly been transferred to a state psychiatric hospital. We also understand that Mr. Zeltser, a patient of several medical conditions, including diabetes, arthritis, heart problems, and stomach ulcer, has been denied medications critical to his health. As reported, these medicines have been withheld ..., despite a medical report from Mr. Zeltser's physician provided to the Belarusian authorities stating that Mr. Zeltser may not survive without the medications indicated. We have been informed that due to his critical health condition, Mr. Zeltser has twice been taken by ambulance to an emergency room, although in neither case was he provided medical attention, as no physicians were on hand. Mr. Zeltser suffers from a severe form of arthritis, among other serious conditions, and is reportedly in constant pain without his medications. According to his Belarus-appointed lawyer, he is in increasingly precarious health.

***

In addition to the physical mistreatment, we understand that Mr. Zeltser has been repeatedly denied access to a U.S. consul, despite diplomatic protests filed by the United States Department of State with the Belarus Ministry of Foreign Affairs. The one visit that was granted, more than two weeks after his arrest, was reportedly held in the presence of a KGB official and thus was not confidential."

37.    The Bar Association Letter further stated that the charge that the KGB claimed to have brought against Mr. Zeltser and Ms. Funk "appears to have no basis to it", lacks "any explanation or detail," and "concerns have thus been reported that this is a fabricated charge, created to justify their unlawful detention," and that Boris Berezovsky "may have instigated action against Mr. Zeltser for his work on behalf of a particular client." (emphasis added).

38.    On April 25, 2008, the U.S. State Department summoned the Belarusian chargé d'affaires in Washington to call for Mr. Zeltser's release. That same day, U.S. consular officer Caroline Savage visited Mr. Zeltser in the KGB detention center. Ms. Savage reported that Mr. Zeltser was "considerably weaker and thinner than when a consular officer was last permitted to visit him on March 27," according to a statement by the U.S. Embassy in Minsk issued on April 29, 2008. The statement added that the U.S. Embassy is "deeply concerned for his health and welfare."

39.    On April 29, 2008, the U.S. Embassy in Minsk, following its second visit to Mr. Zeltser on

April 25, 2008, issued a statement calling for Mr. Zeltser's release on humanitarian grounds:

> "The United States is deeply concerned about the deteriorating health of
> American citizen Emanuel Zeltser, imprisoned in Belarus. Since his detention
> on March 12, the U.S. Embassy in Minsk has only been permitted to visit
> him on two occasions, March 27 and April 25. During the visit on April 25,
> the consular officer from the U.S. Embassy noticed a significant physical
> deterioration of Mr. Zeltser's health since the previous visit on March 27.
> Mr. Zeltser lost a considerable amount of weight and was very weak. Despite
> all efforts by the U.S. Embassy, his lawyer, and his U.S. doctor to comply
> with prison procedures, Mr. Zeltser has not been permitted to take his
> required daily medications, which may be causing irreversible internal
> damage. The United States is extremely concerned for the health and safety
> of Mr. Zeltser should he remain in the care and custody of the Government
> of Belarus. On April 25, the Department of State requested the Government
> of Belarus to release Emanuel Zeltser on humanitarian grounds immediately.
> We urge the Government of Belarus to favorably consider this request in
> order to save the life of an American citizen suffering in its custody."

40.    On April 29, 2008, the U.S. Department of State officially requested by diplomatic note that

the Government of Belarus release Mr. Zeltser on humanitarian grounds.

41.    On May 2, 2008, Union of Councils for Jews in the Former Soviet Union (UCSJ), a human

rights NGO, forwarded a letter to Lukashenka concerning the unlawful abduction, detention and

torture of Mr. Zeltser and Ms. Funk.  The UCSJ letter stated that UCSJ was "extremely concerned

by reports that US citizen Emanuel Zeltser has been detained and imprisoned by the Belarusian

authorities, denied critically needed medical treatment, beaten and otherwise physically abused, then

involuntarily placed in a psychiatric institution."  The UCSJ letter further stated:

> We respectfully request that you immediately look into these allegations of
> abuse to determine the extent of Mr. Zeltser's injuries and order an
> investigation of those officers who may be responsible. The fact that Mr.
> Zeltser suffers from diabetes, a heart condition, and severely painful arthritis,
> makes the denial of proper medical treatment he has suffered while in
> custody especially alarming, to the point of putting his life in danger. Mr.
> Zeltser's placement in psychiatric detention raises a variety of questions
> about the legal bases for the state's case against him. Involuntary placement
> into psychiatric facilities was an especially horrific form of repression against
> dissidents during the Soviet period which resulted in an enormous amount of
> negative publicity around the world. Placing him in psychiatric custody
> leaves the impression that the state is striving to isolate Mr. Zeltser and deal

with him in an extra-legal fashion. (emphasis added.)

42.    The USCJ letter pointed out that "serious concerns had been raised ... about the nature of the charges that Mr. Zeltser and his secretary, Vladlena Funk, face" and urged Belarusian authorities "to release Mr. Zeltser and Ms. Funk immediately, to allow Mr. Zeltser access to his medications, and to ensure that they are subject to no further torture or cruel or degrading treatment, including interrogation under inhumane conditions."

43.    On May 7, 2008, Amnesty International issued an emergent alert, UA 121/08, entitled: "Torture and other ill-treatment/health concern", advising that Mr. Zeltser was "interrogated and beaten, and has been denied the medicine he needs urgently to treat his diabetes and arthritis." Amnesty International further advised that "the US Consul, Caroline Savage, reported that Emanuel Zeltser's health was failing, noting that he had lost weight, was very weak and had difficulty walking and talking, and that he had been beaten two or three times while in custody." Amnesty International advised all of its adherents to "send appeals to arrive as quickly as possible ... calling on the authorities to ensure that Emanuel Zeltser receives immediately the medication his doctor has prescribed ... to order an urgent, independent investigation of reports that Emanuel Zeltser has been tortured or otherwise ill-treated, and to bring those responsible to justice... [and] "urging the authorities to ensure that Emanuel Zeltser is protected from further torture and other ill-treatment, and given regular access to US consular representatives, lawyers of his choice and any medical attention he may require."

44.    On that same day, Hon. Jerrold Nadler, Chair of the House Subcommittee on Constitutional Civil Rights and Civil Liberty, wrote to the Belarusian prosecutor general Grigorii Vasilevich regarding the abuse of Mr. Zeltser by the Belorusian KGB, including the physical abuse and denial of regular access to medication. In his letter, Congressman Nadler urged Mr. Vasilevich "to treat Mr. Zeltser in a fair and humane manner, as specified in Article 36 of the Vienna Convention" and stated that "Mr. Zeltser has the basic human right not to be beaten or physically banned [and] is

entitled to food and medication which keep him from serious illness or death."

45.    On May 30, 2008, the Belarusian government turned down the U.S. government's request for the release of Mr. Zeltser.

46.    On June 15, 2008, MT~Newswire™ released a transcript of an interview with Marina Sivoy, who was then a recently released prisoner of Amerikanka, where Ms. Funk was held and who was a cellmate of Ms. Funk for nearly a month.  Ms. Sivoy reported that Ms. Funk was subjected by the KGB to psychological abuse that was "much worse than physical beating which [Sivoy] once received there." "[Ms. Funk] was dragged to interrogations, sometimes four or five times a day, usually in the middle of the night", Sivoy said.  "After she was brought back to the cell she was hysterical, often incoherent, could not talk ... It would take her at least an hour to calm down but, as she was finally falling asleep, the guards would walk in and order her in a rude and insulting manner to go back to interrogation room, I was worried that she would lose her mind."  Ms. Sivoy also described the humiliating and degrading conditions which female prisoners endured in KGB internment.

> "There are no separate male/female cellblocks in Amerikanka. Women and men are held in the same small ward... all prison guards are men. They conduct daily searches of the cells, our personal things, personal hygiene items ... do body frisks. Strip searches are done by the prison nurse but there are always two male guards present in the cell, even though they usually turn around, it was incredibly humiliating. Men accompanied us to the bathroom twice a day, 6 AM and 6 PM, sometimes they ordered us to leave the bathroom door open so that men-guards and men-inmates who would pass by could see the inside of the bathroom, when we were using it. .... Some cells have a toilette inside, which is not separated at all and less than a meter away from a small table where we ate. Guards open peephole every 2-3 minutes and the toilette is in plain view. Showers were permitted only once a week, often there was no hot water.... Male guards accompanied women to the shower room. When we entered the shower room, guards locked the door from the outside. But the shower room door had a window ... the entire shower room could be seen ... some guards sincerely felt embarrassed themselves even apologized to us, like, what can we do, here we are almost the same prisoners here as you...."

47.    On June 16, 2008, Amnesty International issued a second emergent alert, entitled "Further

Information on Torture and other ill-treatment/serious ill health: Emanuel Zeltser", advising that: "Emanuel Zeltser is still being refused the medication that he desperately needs to treat his diabetes and arthritis. Since his arrest on 12 March 2008, the Belarusian authorities have denied Emanuel Zeltser the treatment he needs and he is now in a great deal of pain, is unable to walk and has difficulty talking."

48.     After numerous requests by the U.S. Department of State and calls of human rights organizations, on June 26, 2008, Belarusian authorities allowed Mr. Zeltser to be examined by an independent U.S. physician, Dr. Albert Benchabbat - - after Mr. Zeltser had been imprisoned for over three months.  Dr. Benchabbat's report revealed the harrowing results of the torture – that Mr. Zeltser's continued physical degeneration had brought him near the point of death.  In his report of the examination of Mr. Zeltser, Dr. Benchabbat noted Mr. Zeltser's pain from debilitating gout and spondylosis, that Mr. Zeltser's joints were inflamed, that he had high blood pressure, hypercholesterolemia, microproteinuria, and hypocalcaemia; severe kyphosis of the spine and was unable to stand without assistance.  The medical report further noted that Mr. Zeltser was suffering from excruciating pain and stated that "it is imperative to resume the patient medications that were taken away before his incarceration," concluding: "Upon review and comparison of the patient's medical history, his chart from March 17, 2008 to June 3, 2008 and results of examination of the current condition of the patient, I can definitely conclude that the patient's health is in a very poor state, his medical condition is rapidly deteriorating and having taken into consideration the current medical treatment which is clearly rudimentary and insufficient for these serious illnesses, Emanuel Zeltser may not survive his detention ..."

49.     On June 26, 2008, the U.S. Department of State presented Dr. Benchabbat's report to Belarusian authorities.  On June 27, 2008, the KGB spokesman, Mr. Natodchaev, in a false press statement incredulously "interpreted" Dr. Benchabbat's report to mean that Mr. Zeltser was found to be "in satisfactory health and fit to remain in prison."  Mr. Natodchaev noted however, that

Belarusian authorities had allowed for an independent medical exam of Mr. Zeltser to demonstrate to the U.S. its "goodwill [and] for an open dialogue."

50.    No formal charges were ever asserted by Belarusian authorities against Mr. Zeltser and/or Ms. Funk. Nor were they ever tried by a Belarusian court. Instead, Mr. Zeltser and Ms. Funk were simply advised in a closed-door proceeding that they had been found "guilty" and were required to serve lengthy prison sentences in Belarusian Gulag.

51.    On July 31, 2008, Amnesty International renewed its emergent alert "Further Information on Torture and other ill-treatment/health concern: Emanuel Zeltser" advising the world of the "closed door trials" of Mr. Zeltser and Ms. Funk and the refusal of Belarusian authorities to permit presence of the representatives of the U.S. State Department. (Id.)

52.    On August 2, 2008, FrontierNews™ reported that a Belarusian court clerk confirmed that no trial of Mr. Zeltser and/or Ms. Funk is reflected in Belarusian court records.

53.    On September 16, 2008, at a Hearing of the Commission on Security and Cooperation in Europe (the US Helsinki Commission), Assistant Secretary of State, David J. Kramer stated:

> "In addition to the [undemocratic] conduct of elections in Belarus, another key issue in improving the relations between the U.S. and Belarus is Belarusian authorities' treatment of imprisoned U.S. citizen Emanuel Zeltser ... Despite our many repeated requests, we ... were denied access to his closed trial. And despite our many efforts, including facilitating an exam by an American doctor and even bringing his medications to prison officials, Mr. Zeltser reports he has not been allowed access to all his prescription medicines or their comparable Belarusian equivalents. Our consular officer and the American doctor reported such a severe deterioration to his health since his imprisonment that we have requested Mr. Zeltser's release on humanitarian grounds. With a real possibility for a significant improvement in the relationship between U.S. and Belarus, we hope there will be a quick, humanitarian resolution in Mr. Zeltser's case."

54.    On September 24, 2008, Amnesty International issued new alert stating: "Amnesty International is concerned that the U.S. Embassy officials were not granted access to any court hearings, and Emanuel Zeltser's lawyer was obliged to sign a non-disclosure clause."

59.    On November 4, 2008, Belarusian authorities moved the plaintiffs to a transit holding facility

known as "Volodarka" while they awaited further transfers to KGB penal colonies. Their lawyer, who observed Volodarka, reported that Mr. Zeltser and Ms. Funk "are deprived of the elementary sanitary facilities, there are no mattress, Emanuel is totally deprived of all his medications, his handcuffs are so tight that there is no blood circulation in his hands, he is denied food I brought to him ... they are under totally inhuman, degrading conditions and are subject to constant humiliation." Notably, Volodarka prison had been also observed by Oleg Volcheck, former prosecutor and member of the Minsk City Council, who reported in the June 2008 Report of the International Federation for Human Rights:

> "I was shocked. Overcrowded cells, small windows, an hour of walking per day. The building of the detention facility is old, and 1800 people were kept in it, which exceeded the norm by 4.5 times. Some detainees had to sleep under the beds as there was not enough space for everybody. I was astonished by the windows: in the cell with 50 people (actually designed for 25), there was only one window measuring 50 by 50 cm, which was totally covered by so called 'eyelashes'. It was damp and moist in the cells, there was no fresh air, and sometimes the door had to be opened at night. The jail is miserable for non-smokers. All the walls were greasy, covered in dirt and moist. The toilet was in the general view and only separated by a small screen. It reminded me of stories about jails during Tsarist times. The top floors of the building had a better 'climate', but those in the basement cells had their limbs rotting away, and their skin covered in boils."

55.    On or about November 10, 2008, a day before their transfer to the KGB penal colonies, Ms. Funk was driven blindfolded to a location approximately 30 minutes away from the Volodarka detention facility. When her blindfold was removed, she found herself in a lavishly decorated room, where she had been apparently awaited by two well dressed men. The men introduced themselves as principal executives of Belneftekhim and offered Ms. Funk a drink. One man, who identified himself as "Vladimir," explained to Ms. Funk that the U.S. sanctions against Belneftekhim are suffocating the company and the Belarusian economy, and causing the Belarusian people great hardship. Vladimir advised that Mr. Zeltser's abduction in London was carried out at the request of Belneftekhim to bring the United States to its senses, and that Ms. Funk was simply in the wrong place at the wrong time. The Belneftekhim representatives advised Ms. Funk that if she agreed to

sign "confessions" regarding Mr. Zeltser's "spying" on Belneftekhim, explaining that such "confessions" would embarrass the U.S. and force it to lift its sanctions against Belneftekhim. "Vladimir" suggested that the signing should take place before consular representatives of the Russian Federation and, in exchange, Ms. Funk would be permitted to walk out with the consular representatives and leave Belarus. Ms. Funk declined to sign false documents and was again blindfolded and driven back to Volodarka.

56.    On November 11, 2008, Mr. Zeltser was transferred to a KGB-operated penal colony near Mogilev. The train-cell in which Mr. Zeltser was transported, was designed to transport four inmates; however the convoy squeezed in 19 (!) men, literally on top of one another. There was no food or drinking water and no one was allowed to go to the bathroom during the 11-hour trip. Immediately upon arrival, Mr. Zeltser was brought to the prison hospital barrack with severe chest pain and a sharp rise in blood pressure. Yet, the Belarusian government continued to withhold his physician-prescribed medications. He received intravenous fluids for nutrition. A nurse attended to him, but no doctor was on staff.

57.    The following day, Ms. Funk was transported a women's KGB-supervised penal colony # 4 near the town of Gomel - - in a similar wretched manner.

58.    On December 18, 2008, an urgent letter signed by eight ranking Members of the U.S. Congress was dispatched to Belarusian dictator Lukashenka demanding the immediate release of Mr. Zeltser, stating:

> "... we are writing to you today to express our grave concern regarding the health and well-being of Emanuel Zeltser, a U.S. citizen imprisoned in Belarus... We are deeply troubled by Mr. Zeltser's arrest as well as the inhumane treatment he has received while in your government's custody... during Mr. Zeltser's internment in Belarus he has been denied regular independent medical evaluation and the U.S. consul in Minsk has reported that he has been physically assaulted and abused while in detention. This abuse is unconscionable and has been reported by Amnesty International, which has urged authorities in Belarus not to subject Mr. Zeltser to "further torture and other ill-treatment." As you know, the U.S. Department of State has also directly expressed "deep concerns about the state of his health," and

has repeatedly called for Mr. Zeltser's release on humanitarian grounds, as has Representative Alcee L. Hastings, Chairman of the Commission on Security and Cooperation in Europe. We share their concerns and strongly urge your government to immediately and unconditionally release Mr. Zeltser..."

59.    On December 22, 2008, the Washington D.C. law firm, Patton Boggs, filed a complaint with the United Nations Human Rights Committee on behalf of Mr. Zeltser. (The Complaint notes that although the Complaint centers on Mr. Zeltser, the facts therein relate to Ms. Funk as well). The Complaint alleged that Belarusian authorities violated Mr. Zeltser's civil and political rights, noting that Mr. Zeltser faced "physical beatings, inhumane and unsanitary treatment, including withholding physician-prescribed medications" during his KGB detention. The case of unlawful detention was also brought up before the UN Special Rapporteur on Torture.

60.    On January 9, 2009, MSNBC aired a report ("Countdown with Keith Olbermann") which accurately summarized the plight of Mr. Zeltser and Ms. Funk:

> "Number one, torture-gate. The story is all too familiar, a citizen of another country is drinking coffee at a café in a bustling city center. Before he passes out, he vaguely realizes the coffee has been spiked. Next thing he knows, he is on a private plane being renditioned to another country. He wakes next in a cold cell and when he tells them he needs medication for diabetes and arthritis and a heart condition, they instead torture him, and they move him from country to country and cell to cell, while at home, his desperate friends and neighbors try to find out what happened to him and how to save his life. Finally, he is tried in an extra-constitutional court, where he is permitted only the most perfunctory of defenses. He is convicted on manufactured evidence that he can neither see nor challenge and he is told he will stay in prison indefinitely. Some alleged terrorists rotting at Gitmo, awaiting the moment that we as a nation come to our senses? No, this is the journey of Emanuel Zeltzer of New York. He's a lawyer. The city from which he was kidnapped last March was London. The place he was taken to was in Belarus. And the place he languishes to this day is a KGB penal colony. His alleged crimes? Economic espionage against Belarus, using false official documents, and possession of illegal drugs. Until he was renditioned, Zeltzer had never been in Belarus and the illegal drugs he was convicted of possessing, his medication for diabetes and arthritis and a heart condition. A private law firm and Amnesty International and our State Department are doing all they can to rescue this New York attorney.

61.    On January 16, 2009, Amnesty International once again issued an emergent alert advising

that Mr. Zeltser was being held at a penal colony in Eastern Belarus: "His health has deteriorated further, and the Belarusian authorities are continuing to deprive him of essential medication for various ailments, including diabetes, heart problems and severe arthritis."

62.     In the beginning of January 2009, succumbing to international pressure, Belarusian authorities permitted Mr. Zeltser to be examined again by an independent U.S. physician, Dr. Benchabbat. Dr. Benchabbat traveled to Belarus and examined Mr. Zeltser in prison. His report dated January 9, 2009, stated that "the problem must be addressed as soon as possible" and further that Mr. Zeltser's continuing detention in Belarus "is equivalent to a death sentence."

63.     Notably, in addition to Dr. Benchabbat, Mr. Zeltser was examined by several top Belarusian physicians personally appointed by Lukashenka. Remarkably, their report was consistent with the report of Dr. Benchabbat.

64.     On February 5, 2009, Robert Wood, acting U.S. State Department spokesman, said during the daily briefing that the State Department continued calls for Mr. Zeltser's release, noting that he was subjected to "abuse in prison" and that they have formally protested the mistreatment to the Belarusian government. "We don't use the word lightly," Wood said Thursday, referring to the abuse. "It's a very troubling situation there, and the Secretary [of State] is focused on this" Mr. Wood added.

65.     On February 11, 2009, Chair of the Commission on Security and Cooperation in Europe (The Helsinki Commission) Senator Benjamin L. Cardin denounced the purported "closed doors trial" over Mr. Zeltser and Ms. Funk and noted:

> "The U.S. Embassy in Minsk criticized the proceedings, noting that it was denied the opportunity to observe the trial. The State Department has repeatedly called for Mr. Zeltser's release on humanitarian grounds. So have others in Congress, especially my colleague on the Helsinki Commission, co-chairman Representative Alcee Hastings."

Senator Cardin further stated:

> "The poor human rights record of President Lukashenka's regime is well

19

known. No American--indeed no human being--should be subjected to the kind of treatment Mr. Zeltser has been forced to endure during his incarceration. Despite Mr. Zeltser's grave health condition--he suffers from heart disease, type 2 diabetes, severe arthritis, gout, and dangerously elevated blood pressure—Belarusian authorities have repeatedly refused to provide Mr. Zeltser with his prescribed medications."

66.     Pressure on Belarus intensified. "It's very exceptional," said Jonathan M. Moore, the U.S. chargé d'affaires in Belarus in his February 15, 2009 interview with the New York Times. "This is the only time in my knowledge that a citizen of any country was arrested immediately upon arrival, held by the KGB, sentenced in a closed trial and has been held for so long when the state of his health is such a concern." Mr. Moore noted that Belarusian authorities detained Mr. Zeltser, who was accompanied by his assistant Ms. Funk, "under mysterious circumstances ... moments after he landed at the airport in Minsk" and "tried him in closed court against the protests of American diplomats."

67.     After being held in Belarusian KGB detention facilities for 373 days, Ms. Funk was finally released on March 20, 2009, after the Russian Ambassador to Belarus indicated that her continuous detention may have a negative impact upon the relationship between the two countries.

68.     Mr. Zeltser's imprisonment continued while the Belarusian authorities tried to negotiate a deal with the U.S. Department of State to trade Mr. Zeltser's freedom for the lifting of U.S. sanctions against Belneftekhim.

69.     In the beginning of June of 2009, Mr. Zeltser went on a hunger strike widely reported by international media. Reuters in its report "US Citizen Jailed In Belarus On Hunger Strike" noted that Zeltser, "who once testified before Congress on Russian organized crime, was jailed in the ex-Soviet republic last year under murky circumstances"

70.     U.S. and international pressure on the government of Belarus to free Mr. Zeltser grew more intense. However, the U.S. government took a firm stance against using a citizen held hostage as a "bargaining chip" said Jonathan Moore, U.S. chargé d'affaires in Belarus.

71.     On June 12, 2009, President Barack Obama continued the sanctions imposed against Belneftechim pursuant to the *Notice on Continuation of the National Emergency With Respect to the Actions and Policies of Certain Members of the Government of Belarus and Other Persons That Undermine Democratic Processes or Institutions in Belarus*.

72.     On June 30, 2009, a delegation of U.S. Senators and Congressmen traveled to Belarus and demanded the immediate release of Mr. Zeltser.  Fearing additional sanctions, Belarusian dictator Lukashenka signed an order decreeing Mr. Zeltser's release.  "I never thought that this man could become an issue in relations between our  states," Lukashenka said demurely, "[but] if it is very important to America and our relations and may contribute to the normalization of our relations, I'll sign the edict today."  Mr. Zeltser was released from KGB detention later the same day, after 473 days in captivity.

### FIRST CAUSE OF ACTION: ASSAULT AND BATTERY

73.     Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

74.     As heretofore alleged, on or about March 11, 2008, the KGB Parties, unbeknownst to Zeltser and Funk, placed and/or caused to be placed sedatives in Plaintiffs' drinks of in a dose sufficient to make them sleepy and disoriented.  Once Zeltser and Funk were sufficiently sedated, The KGB Parties caused Zeltser and Funk to be placed in an automobile and transported to and placed aboard a private jet bound for Belarus. As alleged heretofore, Plaintiffs were repeatedly tortured in Belarus by the KGB Parties.

75.     The above wrongful acts involved intentional touching of, and/or application of force to, the bodies of Zeltser and Funk in a harmful or offensive manner, and without their consent.

76.     The KGB Parties intended to cause a harmful or offensive contact.

77.     The Defendants in substantial manner aided, abetted and participated in the above mentioned wrongful conduct.

SECOND CAUSE OF ACTION: INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS

78.     Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

79.     For reasons afore alleged, the KGB Parties engaged in extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.

80.     The KGB Parties, by their extreme and outrageous conduct intentionally caused severe emotional distress to the Plaintiffs.

81.     The Defendants in substantial manner aided, abetted and participated in the above mentioned wrongful conduct.

THIRD CAUSE OF ACTION: FALSE IMPRISONMENT

82.     Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

83.     As heretofore alleged, on March 10, 2008, Zeltser and Funk, traveled to London for a business meeting.  During their meeting, unbeknownst to Zeltser and Funk, the KGB Parties laced their drinks with a sedative and transported them to a private jet, en route to Minsk, Belarus.

84.     By confining Zeltser and Funk in a car, private jet and various Belarusian KGB facilities, the KGB Parties interfered with Zeltser's and Funk's personal interest of freedom from restraint of movement.

85.     The KGB Parties intended to unlawfully confine Zeltser and Funk.

86.     As heretofore alleged, Zeltser and Funk were conscious of the confinement, and neither Zeltser nor Funk consented to the confinement.

87.     The confinement was wholly unlawful and had not been privileged.

88.     The Defendants in substantial manner aided, abetted and participated in the above mentioned

wrongful conduct.

## FOURTH CAUSE OF ACTION: TORTIOUS INTERFERENCE
## WITH CONTRACTUAL RELATIONSHIP

89.     Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

90.     As heretofore alleged, at all relevant times, Plaintiffs had valid contracts with a number of clients for the provision of legal and advisory services.

91.     The KGB Parties knew about the existence of these contracts and sought to cause the breach of the contracts.

92.     By intentionally and unlawfully detaining the Plaintiffs, the KGB Parties procured the actual breach of contracts.

93.     As heretofore alleged, the Defendants orchestrated and directly participated in unlawful abduction and rendition of Plaintiffs to Belarus, where the KGB Parties, at the behest of the Defendants unlawfully detained and held for 12 and 16 months respectively.

94.     As a result of Defendants' actions resulting in Plaintiffs' unlawful detention and confinement in Belarus, numerous breaches of contract for provision of legal and advisory services by Plaintiffs occurred, causing Plaintiffs and their clients substantial ascertainable damages.

95.     The KGB Parties intended to harm Plaintiffs by interfering with their contractual relationship with clients.

96.     The KGB Parties' actions were unlawful, criminal, wanton and actuated by malice and had no privilege, excuse or justification.

97.     The Defendants in substantial manner aided, abetted and participated in the above mentioned wrongful conduct.

98.     Plaintiffs suffered damages resulting from the Defendants' intentional interference with the contractual relationship alleged herein.

## FIFTH CAUSE OF ACTION: TORTIOUS INTERFERENCE
## WITH PROSPECTIVE ECONOMIC ADVANTAGE

99.     Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

100.    As heretofore alleged, Plaintiffs had an economic relationship with their clients.

101.    This economic relationship contained significant probability of future economic benefit to Plaintiffs.

102.    The Defendants knew of the existence of the relationship between Plaintiffs and their clients and sought to disrupt this relationship.

103.    The relationship was actually disrupted.

104.    Defendants' actions were unlawful, criminal, wanton and actuated by malice and had no privilege, excuse or justification.

105.    Plaintiffs suffered actual damages directly and proximately caused by unlawful and malicious the acts of Defendants.

## SIXTH CAUSE OF ACTION: CONVERSION

106.    Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

107.    As heretofore alleged, after the Defendants, acting in concert with the KGB Parties, choreographed Plaintiffs' abduction and rendition to Belarusian KGB, the KGB operatives, coerced Zeltser by torture to telephone his hotel in London and "authorize" the release Plaintiffs' personal effects left at the hotel to Defendants in London.

108.    Such effects included original documents, computer equipment, valuable jewelry and wristwatches, clothing and travel items, and £5,740 in cash.

109.    The Defendants wrongfully took possession of the above referenced property with intent to permanently deprive the Plaintiff of their use and ownership.

24

110.    Plaintiffs had legal proprietary and possessory right and interest in this specific identifiable property taken by the Defendants with intent to permanently deprive Plaintiffs of their property.

111.    Defendants wrongfully exercised and continue to wrongfully exercise dominion over Plaintiffs' personal property in derogation of Plaintiffs' rights.

112.    Defendants' actions constitute a distinct act of dominion wrongfully exerted over Plaintiffs' personal property in denial of or inconsistent with Plaintiffs' rights therein.

113.    Plaintiffs suffered financial damages as a direct and proximate cause of Defendants' conduct.

SEVENTH CAUSE OF ACTION: PRIMA FACIE TORT
(PLEAD IN THE ALTERNATIVE)

114.    Plaintiffs repeat and reallege all of the allegations set forth above with the same force and effect as if fully set forth at length herein.

115.    In the unlikely event, the Court finds that the Defendants' acts and series of acts were lawful, the Defendants should be held liable under the *prima facie* tort doctrine.

116.    As afore alleged, the Defendants, acting in concert with the KGB Parties, engaged in intentional and malicious actions, causing the Plaintiffs harm and special damages.

117.    As a direct and proximate cause of Defendants' intentional, malicious, and wanton actions, the Defendants inflicted harm upon the Plaintiffs.

118.    The harm inflicted upon the Plaintiffs by the Defendants, acting in concert with the KGB Partieswas without excuse or justification.

119.    As a direct and proximate cause of the Defendants' intentional, malicious, and wanton actions, Plaintiffs suffered special damages, such as legal fees and other direct expenses, expended by Zeltser and Funk in securing their release from the Belarusian KGB.  In addition, Plaintiffs have suffered special damages in the form of unnecessary legal fees and related expenses in defending bogus proceedings in various jurisdictions, and further suffered loss of specific valuable property.

120.    The above alleged financial losses are specific and capable to be measured in money, and

will be reduced to a specific documented sum at the time of the trial.

## DEMAND FOR PUNITIVE AND EXEMPLARY DAMAGES

121.    Defendants' conduct as heretofore and hereinafter alleged was willful, wanton and

outrageous beyond the ability of ordinary human beings to comprehend and such that the conduct

of was oppressive and malicious, warranting punitive damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all causes of action and all issues so triable.

WHEREFORE, Plaintiff demand judgment against the Defendants, on each and all Causes

of Action in the complaint on behalf of each and all plaintiff(s) against each and all defendant(s) for

compensatory damages in the sum of $20 million for each individual plaintiff, and punitive damages

in the sum of $50 million for each individual plaintiff, making in all the sum of $140,000,000.00

(ONE HUNDRED FORTY MILLION DOLLARS), along with interest, attorneys' fees, costs and

disbursements.

Dated: June 26, 2012
Brooklyn, New York


STERNIK & ZELTSER

/s/_____
by:    Emanuel Zeltser
119 West 72 Street #229
New York, NY 10023
(212) 656-1810
email: ez@russianlaw.org

Attorneys for Plaintiffs
Vladlena Funk and Emanuel Zeltser

## INDIVIDUAL VERIFICATIONS

EMANUEL ZELTSER, certifies and affirms under the penalty of perjury that he has read the foregoing complaint and all facts therein are true and correct as to himself and believed to be true and correct as to all other matters, to the best of his knowledge and belief.

Emanuel Zeltser

Dated: June 26, 2012

VLADLENA FUNK, certifies and affirms under the penalty of perjury that she has read the foregoing complaint and all facts therein are true and correct as to herself and believed to be true and correct as to all other matters, to the best of her knowledge and belief.

Vladlena Funk

Dated: June 26, 2012