UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
VLADLENA FUNK and EMANUEL                                  :
ZELTSER,                                                   :
                                                           :    **MEMORANDUM DECISION**
                                    Plaintiffs,            :    **AND ORDER**
                                                           :
                   - against -                             :    14 Civ. 0376 (BMC)
                                                           :
BELNEFTEKHIM a/k/a CONCERN                                 :
BELNEFTEKHIM, and BELNEFTEKHIM                             :
USA, INC., and JOHN DOES 1 – 50,                           :
                                                           :
                                    Defendants.            :
                                                           :
---------------------------------------------------------- X

**COGAN,** District Judge.

This is a removed action raising state law claims arising out of the well-publicized abduction and torture of the two plaintiffs, U.S. citizens, by individuals alleged to be tied to officials in the Government of Belarus. Several motions are pending before the Court.

The most recent is plaintiffs' motion for sanctions, their second such motion. The sanctions issue arises from defendants' refusal to comply with Court-ordered discovery concerning their defense of sovereign immunity. Monetary sanctions have not succeeded in inducing compliance, and the Court therefore strikes the sovereign immunity defense. The Court denies plaintiffs' motion for a default judgment, although it recognizes that such relief may become appropriate if defendants continue to obstruct this proceeding.

In addition, plaintiffs have moved to remand this action for lack of subject matter jurisdiction and untimely removal. The Court finds that diversity jurisdiction is present and since removal was based on a non-frivolous claim of sovereign immunity, the time for removal

can be extended. The particular facts at issue warrant an extension, so the motion to remand is denied.

Finally, defendants' motion to dismiss is granted only to the extent of dismissing plaintiffs' claim for fraud for failure to plead with particularity. Leave to amend is also granted. Since the presence of personal jurisdiction will likely turn on the adequacy of the amended fraud claim, the Court reserves determination on defendants' motion to dismiss for lack of personal jurisdiction.

## BACKGROUND

### I.

The following allegations are taken from the amended complaint. Plaintiff Emanuel Zeltser is a U.S. citizen and New York attorney. He represented an investment group which had made a significant long-term investment in defendants Belneftekhim ("BNTK"), a Belarusian holding and oil company, and Belneftekhim USA, Inc. ("BUSA"), its U.S. subsidiary. The amended complaint appears to allege that as part of his fee arrangement with his clients, Zeltser also acquired an individual interest in defendants' "ownership and property." Plaintiff Vladlena Funk, a naturalized U.S. citizen, was Zeltser's legal assistant and also a freelance journalist.

An Executive Order issued by the Director of the Office of Foreign Assets Control of the United States Treasury ("OFAC") in 2006 imposed sanctions on the President of Belarus, Alyaksandr Lukashenko, his son Viktor, and some companies, including defendants, which they either own or control. This Executive Order, number 13405, was entitled "Blocking Property of Certain Persons Undermining Democratic Processes or Institutions in Belarus." The basis of the Executive Order was that Belarus, through the Lukashenko regime, had engaged in human rights

abuses and public corruption, and that its actions constituted an "extraordinary threat to the national security and foreign policy of the United States."

On November 13, 2007, the United States Treasury Department froze the assets of BNTK and shut down its commercial activities in the United States pursuant to the Executive Order. Notwithstanding this executive action, BNTK continued to engage in U.S.-based commerce. It was able to do this because as a conglomerate comprised of over 500 companies, it simply shifted activities from those entities that the Treasury Department had targeted to other entities that it had not.

As a result of these sanctions, a "commercial dispute" arose between Zeltser's clients and defendants because defendants refused to honor the investment made by Zeltser's clients. In late 2007 and early 2008, defendants' representatives contacted plaintiffs by telephone from New York City and requested face-to-face meetings in order to resolve the dispute. Plaintiffs agreed, and in the first week of March 2008, the sides met at the Carnegie Club in New York City. Defendants' representatives at that meeting included Viktor Voronin, who identified himself as BNTK's legal advisor, Tatsyana Moysievich, who "held herself to be a director and senior officer of Belneftekhim in charge of its U.S. operations," and two unidentified individuals. Two other unidentified "senior executives of Belneftekhim" were present by phone, as was Boris Berezovsky, a Russian national and notorious international criminal, who was a substantial shareholder in BNTK.[1] Although this meeting did not result in a settlement, the parties agreed to meet again a few days later.

The second meeting took place at Zeltser's New York City apartment and had "the same participants present." Once again, the parties did not come to a resolution. Defendants' representatives invited plaintiffs to Belarus to continue negotiations. Plaintiffs declined out of

---

[1] Berezovsky died in London in 2013.

3

concern for their safety, at which point defendants informed plaintiffs that Berezovsky would act as defendants' "principal agent to lead the continuing settlement negotiations," and suggested that further negotiations take place in London, where Berezovsky lived.

Plaintiffs flew to London on March 10, 2008. The first meeting in London took place the following day at a hotel. Berezovsky was present with two men whose business cards showed them to be a "senior legal advisor and vice-president" of BNTK. Three more BNTK representatives, Moysievich and two others, participated in the meeting by telephone. After this session, Berezovsky proposed to continue negotiations that evening at a restaurant.

Berezovsky, along with Voronin and three others, met plaintiffs at the restaurant. Plaintiffs were drugged during the meeting, causing them to feel "light-headed and sleepy." As they were attempting to leave the restaurant, Berezovsky guided them into his limousine, which drove to a private airport on the outskirts of London. Against their will, plaintiffs boarded Berezovsky's private jet and were flown to Minsk.

Plaintiffs were detained and transported to a Stalin-era KGB detention facility as soon as they landed in Belarus. During their captivity, plaintiffs were interrogated and tortured. They were stripped naked, beaten, deprived of food and sleep, and forced into tiny solitary confinement cells that lacked any heat or ventilation. Frequently, plaintiffs were removed from their cells and interrogated. Defendants' representatives directed, and were present for, many of these interrogations and human rights abuses. Plaintiffs claim that the motivation behind their abductions was to: 1) blackmail the U.S. into lifting economic sanctions that President Bush had placed on Belarus in 2006, which were continued by President Obama in 2009 and 2) force plaintiffs' clients in the U.S. and Russia to renounce their ownership interest in defendants.

These events drew considerable media attention. On March 20, 2008, Senator Charles Schumer alerted the U.S. Department of State to Zeltser's abduction and requested that the State Department "do all in its power to see that Mr. Zeltser's serious medical conditions are attended to, and that his detention matter is brought to a quick, successful conclusion." On April 29, 2008, the U.S. Embassy in Minsk issued a statement calling for Zeltser's release on humanitarian grounds, following its second visit to see him at the KGB detention center. That same day, the State Department officially requested that Belarus release Zeltser. About a week later, Amnesty International issued an alert, which advised that Zeltser's health was failing as he was not getting any medical care and urging the authorities to ensure that he not be mistreated. On May 30, 2008, the Belarusian government denied the U.S. Government's request to release Zeltser. Nevertheless, the outrage continued over the next few months as did requests from various domestic and international organizations and agencies to release plaintiffs.

Ultimately, in the beginning of 2009, Funk was released after 373 days when the Russian ambassador to Belarus indicated that her continued detention might cause deterioration in the relationship between the two countries. One hundred days later, on June 30, 2009, a delegation of U.S. Senators and Congressmen traveled to Belarus and demanded Zeltser's immediate release. That same day, Lukashenko signed an order releasing Zeltser, who had been detained for 473 days.

## II.

Plaintiffs originally brought claims in state court on July 12, 2012, for assault and battery, intentional infliction of emotional distress, false imprisonment, tortious interference with contractual relationship and with prospective economic advantage, conversion, and an alternative claim under the prima facie tort doctrine. Defendants never answered the state court complaint.

In response, plaintiffs filed a motion for a default judgment, which was neither opposed nor decided. On January 16, 2014, defendants removed the action to federal court on the basis of diversity jurisdiction and original jurisdiction for actions involving foreign states.

After the case was removed, the parties filed cross-motions. Defendants moved to dismiss the complaint and plaintiffs moved to remand the case or, alternatively, for a default judgment. While these motions were pending, plaintiffs filed an amended complaint, which added a fraud claim alleging that defendants fraudulently "lured" plaintiffs to London by informing plaintiffs that the purpose of the trip was to settle the ownership dispute. The amended complaint also added 50 John Doe defendants who are alleged to have "aided, abetted and participated in" the actions described above.

On December 31, 2014, the Court reserved decision on the parties' cross-motions because there were factual issues with respect to two preliminary issues. The first was whether BNTK was entitled to sovereign immunity. The second was whether plaintiffs properly served process on defendants. Accordingly, the Court directed the parties to submit a discovery plan that would allow them to obtain the information necessary to either supplement their motions on these points, or to proceed to a hearing.

The parties were unable to agree on a discovery plan. Therefore, the Court ordered one on February 2, 2015. In addition to providing for written discovery and depositions, the Court allowed the parties to supplement their motions on these preliminary issues after discovery concluded.

Although the parties represented that they had engaged in many meet and confer sessions during this discovery period, and defendants withdrew their defective service defense, defendants produced only that which they intended to rely on in their supplemental papers and

6

did not produce anything else to plaintiffs or make any witness available for a deposition. In other words, they produced documents that they believed supported their position but declined to produce anything that might have cut the other way. Nevertheless, defendants filed a voluminous supplement to their motion to dismiss. Rather than limiting these supplemental papers to the preliminary issues highlighted in the Court's December 31st Order, defendants also included unrelated arguments that they had not previously raised in their prior briefs.

Since defendants failed to produce discovery prior to filing their supplemental submission, the parties stipulated that by May 12, 2015, the parties would either agree on discovery that would be produced, or bring a discovery dispute to the Court's attention. At defendants' request, though with plaintiffs' consent, this deadline was extended until June 3, 2015. The parties filed a joint discovery dispute letter with the Court on June 3, 2015, which distilled to a motion to compel by plaintiffs based on defendants' failure to produce discovery in accordance with the Court's December 31st Order.

On July 9, 2015, the Court ruled on this dispute. First, it held that because many of plaintiffs' document requests were phrased in terms of seeking only information on which defendants intended to rely, defendants' provision of just that information was not improper. However, the Court held that plaintiffs were entitled to information regarding BTNK's ownership and structure, as those documents were clearly relevant to defendants' sovereign immunity defense. In addition, the Court required BTNK to produce a Rule 30(b)(6) witness for a deposition.

Three weeks later, on the day before defendants' were required to produce the aforementioned documents, defendants filed an interlocutory appeal of the July 9th Order. The next day, plaintiffs moved for sanctions based on defendants' failure to comply with the July 9th

7

Order. Defendants opposed the motion, arguing that their filing of a notice of appeal of the July 9th Order was proper under the collateral order doctrine and divested this Court of jurisdiction to enforce the Order.

On August 13, 2015, the Court granted plaintiffs' motion for sanctions in part. The Court found that based on defendants' conduct throughout this litigation, they never had any intention of complying with the Court's prior discovery orders. It also found that defendants' appeal of the July 9th Order was frivolous because that order did not conclusively determine the issue of sovereign immunity. Consequently, the Court imposed a $2,000 per diem sanction on defendants until they complied with the Court's discovery orders and also imposed a $5,000 sanction on defendants, payable to Zeltser, for having to litigate this issue. The Court warned defendants that it would consider additional sanctions if they continued their non-compliance.

The next day, defendants filed a notice of appeal from the August 13th Order. Defendants also filed a motion to stay proceedings in this litigation pending the Second Circuit's resolution of the two appeals. On August 24, 2015, this Court denied defendants' motion for a stay in large part because defendants were unlikely to succeed on the merits. As it had stated in the past, the Court explained that defendants' appeals were frivolous under the collateral order doctrine and defendants had not properly invoked appellate jurisdiction. On October 6, 2015, the Second Circuit dismissed both of defendants' interlocutory appeals for lack of appellate jurisdiction since the Court's orders were "not final or immediately appealable."

Plaintiffs now seek to hold defendants in contempt, ask the Court to deny defendants' pending motion to dismiss, and to grant plaintiffs' motion for default judgment, based on defendants' continuing defiance of the Court's July 9th and August 13th Orders.

8

## DISCUSSION

### I.

Federal Rule of Civil Procedure 37 allows a court to impose sanctions for a party's failure to obey a discovery order. See Fed. R. Civ. P. 37(b). That rule gives the court "broad discretion in fashioning an appropriate sanction." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 101 (2d Cir. 2002). These sanctions may include, but are not limited to, orders deeming certain facts established, prohibiting the disobedient party from supporting certain defenses, striking pleadings, granting a default judgment, and entering an order of contempt. See Fed. R. Civ. P. 37(b)(2)(A). Rule 37 does not identify the factors a court should consider in determining whether to sanction a party for noncompliance with a discovery order, but instructs that any sanction must be "just." Id.; see also Linde v. Arab Bank, PLC, 269 F.R.D. 186, 195 (E.D.N.Y. 2010). "Ultimately, discovery sanctions should, 'insofar as possible . . . restor[e] the prejudiced party to the same position [it] would have been in absent the wrongful [withholding] of evidence by the opposing party.'" Linde, 269 F.R.D. at 195 (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir.1998)).

Defendants repeated submissions to this Court, as well as their frivolous appeals of two of the Court's July 9th and August 13th discovery orders,[2] have confirmed the Court's initial determination that they never intended to comply with the any of the Court's discovery orders, including its initial December 31st Order providing for limited discovery on the issue of sovereign immunity. Furthermore, the Court has already found defendants' noncompliance to be

---

[2] Since the Second Circuit dismissed both of defendants' interlocutory appeals, their request that the Court refrain from imposing additional sanctions until the Second Circuit renders a decision is moot.

9

willful.  Therefore, the Court finds that a discovery sanction other than the imposition of monetary fines, which defendants continue to refuse to pay, is appropriate.

However, the Court rejects plaintiffs' contention that any sanction other than granting plaintiffs' default judgment motion will be meaningless.  Although the Court has discretion to do so, see Fed. R. Civ. P. 37(b)(2)(A)(vi), and although it may eventually come to that point, it is important to impose sanctions in a graduated manner and avoid the most severe sanction unless nothing else will suffice.  The more appropriate sanction at this stage is to strike defendants' sovereign immunity defense and preclude them from relying on sovereign immunity.  See Fed. R. Civ. P. 37(b)(2)(A)(ii).  This includes defendants' defense that BNTK is an "organ" of Belarus.  Since defendants failed to produce anything in discovery that might have been adverse to their claim for sovereign immunity, this sanction is the most appropriate to put plaintiffs in the same position they might have been in had defendants complied with the Court's Orders.  Therefore, the Court is vacating the per diem sanction against defendants going forward.  However, defendants must pay the $136,000 in accumulated sanctions to the Clerk of Court, plus the $5,000 payable to Zeltser, all within 14 days, or face additional sanctions, which may include a default judgment.

Accordingly, the Court now has the occasion to consider what remains of plaintiffs' earlier motion to remand the case to state court and for a default judgment, as well as defendants' motion to dismiss.

## II.

Plaintiffs' motion to remand is denied.  Because defendants are now precluded from asserting a sovereign immunity defense, they are not able to satisfy their burden that removal was proper pursuant to 28 U.S.C. § 1441(d) in the first instance.  See Blockbuster, Inc. v.

Galeno, 472 F.3d 53, 57 (2d Cir. 2006). However, even though removal cannot be sustained under § 1441(d), defendants also removed this case on the alternative ground of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Although the Court recognizes the technical defect in the notice of removal which fails to plead the citizenship of BNTK, the Court has examined whether it lacks subject matter jurisdiction *sua sponte*, see Lyndonville Sav. Bank & Trust Co. v. Lussier, 211 F.3d 697, 700-01 (2d Cir. 2000), and is satisfied that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(3). Pursuant to 28 U.S.C. § 1332(a)(3), a district court has subject matter jurisdiction of civil actions between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." Here, plaintiffs are citizens of New York and Florida and BUSA is a citizen of Massachusetts. BNTK is a citizen or subject of Belarus, a fact evident from the amended complaint, and one which defendants do not dispute. Finally, plaintiffs' initial complaint sought damages in the amount of $140 million, satisfying the amount in controversy requirement. Therefore, the case was properly removed on this basis.

Plaintiffs argue that defendants failed to remove the case within thirty days of receiving the complaint as required by 28 U.S.C. § 1446(b). It is undisputed that defendants did not file their notice of removal within this timeframe. However, unlike other removal provisions, a court may enlarge the 30 day period when removal is based on sovereign immunity for "cause shown." 28 U.S.C. § 1441(d). Here, even though the Court has stricken the sovereign immunity defense for failure to comply with discovery, it is not the case that the defense was so frivolous that BNTK could not invoke it and trigger the Court's discretion to enlarge the removal period. After all, even under plaintiffs' theory of the case, BNTK is an entity controlled by the President of Belarus.

Once the case falls within the Court's discretion to enlarge the removal period, it seems prudent to exercise that discretion to retain jurisdiction. Although this case was pending in state court for over one year, nothing was litigated in that forum and plaintiffs suffered no prejudice when the case was removed. See Refco, Inc. v. Galadari, 755 F. Supp. 79, 83-84 (S.D.N.Y. 1991). In fact, after almost two years of litigating this case in federal court, the parties would likely be prejudiced if the case were remanded, as this Court has become familiar with the case, the claims, the defenses, and has imposed sanctions. Moreover, considering the sanctions order imposed by the Court and the possibility of additional sanctions, remand would raise difficult issues under the law of the case doctrine. These factors constitute good cause. Therefore, the Court enlarges defendants' time to remove *nunc pro tunc* such that their removal was timely.

Plaintiffs' other arguments, that removal was defective because defendants did not annex plaintiffs' state court motion for default judgment to their notice of removal, and that removal was improper because plaintiffs' complaint is based solely on state law, do not alter this conclusion. Defendants did not need to attach motions to a notice of removal. See 28 U.S.C. § 1446(a) (requiring a notice of removal to include only "a copy of all process, pleadings, and orders served upon such defendant or defendants in such action"). Similarly, removal is not improper simply because a complaint fails to allege a federal question. Removal merely requires a basis for a federal court's subject matter jurisdiction, which is not limited to federal question jurisdiction. See 28 U.S.C. § 1441. Therefore, plaintiffs' motion to remand is denied.

**III.**

The Court will not grant plaintiffs a default judgment at this stage. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993) ("The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion

of a district court . . ..").  "In exercising this discretion, district courts consider three factors: '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'"  Dorcely v. Wyandanch Union Free Sch. Dist., No. 06 Civ. 1265, 2007 WL 446344, at *1 (E.D.N.Y. Feb. 7, 2007) (citing Diakuhara, 10 F.3d at 96).  Despite defendants' willful and continued noncompliance with multiple orders of this Court, the Second Circuit has stated its "preference for resolving disputes on the merits."  Id.  The Court is mindful that there is a risk that defendants will not satisfy the sanctions order or participate in the merits phase of this litigation in the same way that they have refused to participate in the preliminary discovery phase; however, that remains to be seen.  Therefore, plaintiffs' motion for a default judgment is denied and the Court will consider defendants' motion to dismiss.

## IV.

All that remains of defendants' motion to dismiss is that plaintiffs' fraud claim does not satisfy Federal Rule of Civil Procedure 9(b), and certain arguments concerning lack of personal jurisdiction.[3]  Because plaintiffs' amended complaint fails to plead fraud with particularity, that claim is dismissed with leave to amend within fourteen (14) days.  See In re Time Warner Inc. Sec. Litig., 9 F.3d 259 (2d Cir. 1993) ("[D]ismissal under 9(b) is usually without prejudice.").  The Court will reserve decision on the remainder of defendants' motion in the event plaintiffs amend the complaint because defendants' personal jurisdiction arguments may well be dependent upon the survivability of plaintiffs' fraud claim.

---

[3] The Court will not consider the parties' supplemental submissions to their motions made after the Court ordered preliminary discovery.  Discovery was ordered only as to the issues of sovereign immunity and service of process and supplements were allowed only as to those issues.  Since defendants are precluded from asserting sovereign immunity as a defense, and since they have withdrawn their service defenses, their supplements are irrelevant.  To the extent the parties made other arguments in these submissions, they were not authorized, and it would be improper for the Court to consider them.

Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Generally, this requires a plaintiff to: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quotation marks and citation omitted). Although the general rule is that Rule 9(b) pleadings cannot be based on "information and belief," the rule can be relaxed for matters "peculiarly within the adverse parties' knowledge" which are "accompanied by a statement of the facts upon which the belief is founded." Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972).

Plaintiffs' fraud claim, as currently pleaded, does not meet this standard. Virtually every allegedly fraudulent statement is not attributed to a specific speaker. For example, plaintiffs allege that "defendants contacted plaintiffs in New York City and requested a face-to-face meeting with the plaintiffs to resolve the ongoing ownership and financial dispute between plaintiffs' clients and defendants." Despite identifying two of the four individuals who were physically present at the meeting, Viktor Voronin and Tatsyana Moysievich, and stating that Boris Berezovsky and two unidentified "senior executives of Belneftekhim" were present by telephone, plaintiffs do not attribute any fraudulent statement made at this meeting to a particular individual. Instead, plaintiffs claim that after defendants' representatives showed plaintiffs allegedly false documents, "defendants' representatives then stated that Belneftekhim did not intend to honor its agreement with the plaintiffs' clients because of 'political turbulence' caused by the U.S. sanctions relating to the defendants." The amended complaint alleges that the fraud continued at a second meeting "in New York City with the same participants present," when "defendants stated that they may have an agreement in principle and invited the plaintiffs to meet

with directors of Belneftekhim in Minsk, Belarus, in order to continue negotiations and possibly conclude the settlement."

These allegations are insufficient. Merely attributing statements to "defendants" is not enough as it neither alleges the names of the speakers nor the specific positions they held for defendants. See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); see also Olsen v. Pratt & Whitney Aircraft, Div. of United Technologies Corp., 136 F.3d 273, 275 (2d Cir. 1998) (dismissing a complaint pursuant to Rule 9(b) where it did not state the positions held by certain "agents, servants, and employees"). Although plaintiffs argue that paragraph 11 of the amended complaint clarifies that the term "defendants" refers to "senior officers of Concern Belneftekhim and those appointed by them with full authority to act for the defendants," this clarification suffers from the same defects. Although the Court recognizes that identifying the John Doe defendants prior to any discovery is difficult, if any of the John Doe defendants are responsible for the fraudulent statements, plaintiffs must at least identify what the Doe defendant said, when it was said, and where it was said. They fail to do so in the amended complaint.

It is also not enough, as plaintiffs appear to argue, that the amended complaint identifies who was present at these meetings and that the Court may infer that Moysievich spoke the bulk of the fraudulent statements because she took a "leading role in the settlement discussions." There is no basis for attributing the allegedly fraudulent statements to any of the named individuals as opposed to the unnamed individuals.[4]

---

[4] For that reason, In re Northern Telecom Ltd. Securities Litigation, 42 F. Supp. 2d 234, 248 (S.D.N.Y. 1998), upon which plaintiffs rely, is inapposite. The court sustained the defendants' objection to strike an allegation that a false statement was made one of three named senior officers. See id. at 237 ("These six separately reported statements do not constitute actionable fraud.").

Even where plaintiffs do attribute a fraudulent statement to a specific speaker – which appears to happen only once, when plaintiffs allege that "Mr. Berezovsky contacted the plaintiffs by telephone in New York and also invited plaintiffs to come for further negotiations with him and defendants' representatives, and a possible 'closing' in London . . ." – plaintiffs do not provide a specific date and location for these statements.  Although "Rule 9(b) does not require that a specific date and time be alleged as to each misrepresentation," State Farm Mut. Auto. Ins. Co. v. Valery Kalika, No. 04 Civ. 4631, 2006 WL 6176152, at *11 (E.D.N.Y. Mar. 16, 2006), the only alleged misrepresentation that plaintiffs attribute to a specific individual lacks this information.[5]  Although the Court may infer that since that plaintiffs traveled to London "on or about March 10, 2008," Berezovsky's statement took place sometime after the meetings in New York City and shortly before their trip to London, it is impossible to know for sure.  Even then, plaintiffs still fail to provide their location at the time this statement was made.  Plaintiffs' fraud claim never puts it all together, and therefore does not satisfy Rule 9(b).

Finally, the Court finds no merit to defendants' claim that plaintiffs needed to parse the misrepresentations made by each corporate defendant.  Plaintiffs have alleged that defendants acted in concert, a fact bolstered by the allegation that Moysievich held herself out to be "director and senior officer of Belneftekhim in charge of its U.S. operations," conflating the two corporate defendants.  The Court agrees with plaintiffs that to the extent that any of defendants' agents, officers, or employees had a motive to be speaking on behalf of one entity as opposed to the other, that information was within defendants' exclusive knowledge and plaintiffs pleading burden is relaxed as to those issues.  See Segal v. Gordon, 467 F.2d at 608 (2d Cir. 1972).

---

[5] By contrast, plaintiffs allege that the New York City meetings described above "took place in or about the first week of March 2008" at the "Carnegie Club in New York City," and at "Zeltser's office on the Upper West Side in Manhattan."

16

## CONCLUSION

Plaintiffs' motion [71] is granted in part and denied in part as set forth above. Plaintiffs' motion [8] to remand and for a default judgment is denied. Defendants' motions [7, 17] are granted in part and decision is reserved in part, such that plaintiffs' fraud claim is dismissed with leave to amend within fourteen (14) days.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
October 20, 2015