```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
VLADLENA FUNK and EMANUEL                                   :
ZELTSER,                                                    :
                                                            :
                              Plaintiffs,                   :    **MEMORANDUM DECISION**
                                                            :    **AND ORDER**
              - against -                                   :
                                                            :    14-cv-0376 (BMC)
BELNEFTEKHIM a/k/a CONCERN                                  :
BELNEFTEKHIM, BELNEFTEKHIM USA,                             :
INC., and JOHN DOES 1-50,                                   :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X
```

**COGAN**, District Judge.

Defendants have moved to dismiss plaintiffs' second amended complaint or alternatively *in limine* to admit certain evidence and preclude certain claims from being submitted to the jury. As explained further below, the motion to dismiss is denied and the motion *in limine* is granted in part and denied in part. Further, the parties shall submit a proposed discovery schedule by July 23, 2019.

## BACKGROUND

### I. Summary of Second Amended Complaint

Plaintiff Emanuel Zeltser is an attorney who was involved in a dispute over the ownership of the entity defendants. On March 11, 2008, Zeltser and plaintiff Vladlena Funk – Zeltser's legal assistant and a freelance journalist – met with defendants' representatives in London. At the meeting, defendants spiked plaintiffs' coffee, kidnapped them, and transported them to Belarus.

At defendants' direction, plaintiffs Funk and Zeltser were detained and tortured

for 383 and 483 days, respectively, and have suffered serious injuries that continue.  Plaintiffs were released after international condemnation of their detention and torture, including the United States government's diplomatic intervention to secure the release of Zeltser, a United States citizen.

After plaintiffs' release, defendants made death threats against Funk – then not a United States citizen – threatening reprisal for any civil action that plaintiffs would bring against defendants.  In particular, defendants noted that Funk frequently visited family in Russia, whose government would readily turn Funk over to Belarus for further torture in light of the close relationship between Russia and Belarus.  Plaintiffs commenced this action shortly after Funk became a United States citizen in June 2012, which assured she would obtain the protection of the United States government in the event of further threats from defendants.

**II.     Summary of Exhibit UU**

Exhibit UU is a transcript of telephone calls between Zeltser and his client, Joseph Kay, on March 13, 2008.  Kay indicated that he is suspicious that Zeltser disappeared and suggested that Zeltser is being held hostage, which Zeltser did not deny.  Zeltser attempted to persuade Kay to come to Belarus but Kay requested that they meet in London before they meet in Belarus.

**III.    Summary of Exhibit X**

Exhibit X is a report written by Belarusian law enforcement agents about the interrogation of Anatoliy Motkin.  Motkin claimed to be an advisor to Arkady Patarkatsishvili ("Badri"), a major business and political figure in Georgia.  Motkin indicated that on March 11, 2008, Zeltser called him on his cell phone to ask him meet about Zeltser's plans to fly to Belarus regarding Badri's business.  Motkin met with plaintiffs and they traveled to Belarus, where the KGB detained them.

### IV. Status of Discovery

Discovery in this matter is open with respect to limited issues relating to medical examinations but otherwise closed. Defendants' medical expert is scheduled to examine Zeltser on August 1, 2019, and plaintiffs have provided all of Zeltser's hospital records. The parties are negotiating a proposed discovery schedule.

### DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants move to dismiss plaintiffs' claims on the grounds that they are all time-barred. "A statute of limitations defense is most often pleaded as an affirmative defense and requires a factual inquiry beyond the face of the complaint." OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp., 503 F. Supp. 2d 490, 503 (D. Conn. 2007). Although "a statute-of-limitations defense may be raised in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), such a motion should not be granted unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief … ." Ortiz v. Cornetta, 867 F.2d 146, 148 (2d Cir. 1989) (internal quotation marks omitted).

"Dismissal [in light of a motion to dismiss on the basis that the claims are time-barred] is proper only when, drawing all reasonable inferences in favor of the plaintiff, the court concludes that the plaintiff's own factual allegations prove the defendant's statute of limitations defense." St. John's Univ., New York v. Bolton, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010). "For a defendant's statute of limitations arguments to succeed, the plaintiff must plead itself out of court." Id. (internal quotation marks and alterations omitted).

Plaintiffs claim defendants are equitably estopped from claiming that their claims are time-barred. "In order to invoke equitable estoppel, a plaintiff must show that the defendant wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." Overall v. Estate of Klotz, 52 F.3d 398, 404 (2d Cir. 1995) (internal quotation marks omitted). A "reasonable fear of retaliation may be sufficient to constitute extraordinary circumstances warranting equitable tolling, particularly if the person threatening retaliation is a defendant or another official who could be or was influenced by a defendant." Davis v. Jackson, No. 15-cv-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept. 30, 2016).

It is far from clear from the second amended complaint that plaintiffs' claims are time barred, as they have alleged extraordinary circumstances that could warrant the application of equitable tolling: they were drugged, kidnapped, flown to Belarus, held captive, and tortured for 383 and 483 days, respectively. Plaintiffs have also alleged that they deferred commencing litigation until shortly after Funk became a United States citizen in light of defendants' death threats against Funk and the role Zeltser's United States citizenship played in the diplomatic intervention of the United States government that helped secure plaintiffs' release. Because plaintiffs did not plead themselves out of court here, defendants' motion to dismiss is denied. Bolton, 757 F. Supp. 2d at 157 ("For a defendant's statute of limitations arguments to succeed, the plaintiff must plead itself out of court.") (internal quotation marks and alterations omitted).[1]

---

[1] Since defendants' motion is denied on the basis of equitable tolling, the Court need not and does not reach the additional grounds that plaintiffs have provided for denying defendants' motion to dismiss. The Court also denies as moot defendants' request to convert their motion to dismiss into a motion for summary judgment so that they may introduce evidence outside of the pleadings that is unrelated to equitable tolling.

This ruling does not finally resolve the issue. "[T]he application of the tolling doctrine in this case is a question appropriately reserved for a jury determination." Guobadia v. Irowa, 103 F. Supp. 3d 325, 341 (E.D.N.Y. 2015). Defendants will have the opportunity to present their statute of limitations defense at trial, when the evidence the parties will present about defendants' involvement (or lack thereof) in plaintiffs' injuries will likely overlap with the evidence in support of their statute of limitations defense.

Defendants' arguments to the contrary are not persuasive. First, defendants claim that Overall – where the Second Circuit held that defendants may be equitably estopped from relying on a statute of limitations when they "wrongfully induced the plaintiff to refrain from timely commencing an action by … threats or other misconduct," 52 F.3d at 404 – reflects an outdated interpretation of New York law, which defendants claim no longer recognizes equitable estoppel based on threats. However, none of the cases defendants cite preclude courts applying New York law from holding that defendants are estopped from relying on a statute of limitations after threatening defendants into not commencing litigation.[2] To the extent defendants claim that equitable estoppel is inapplicable here because plaintiffs have "only" alleged that defendants threatened to kill Funk – but without lying to her – their argument is contrary to both New York law and the purpose of equitable estoppel. See Overall, 52 F.3d at 404.

---

[2] For instance, defendants cite a decision the Court of Appeals issued 11 years after Overall for the proposition that equitable estoppel applies when plaintiffs "relied on defendants' fraud, misrepresentation, and deception to their detriment." Zumpano v. Quinn, 6 N.Y.3d 666, 683, 816 N.Y.S.3d 703 (2006) (internal citations omitted). However, there is no reason to believe the Court of Appeals viewed fraud, misrepresentation, and deception as an exhaustive list of all wrongdoing that gives rise to equitable estoppel. To the contrary, in Zumpano, the Court of Appeals confirmed the broad scope of equitable estoppel when it explained that "courts will not bar the assertion of equitable estoppel when plaintiff is unable to file a lawsuit because of defendant's affirmative wrongdoing" in light of courts' power "to bar the assertion of the affirmative defense of the Statute of Limitations where it is the defendant's affirmative wrongdoing … which produced the long delay between the accrual of the cause of action and the institution of the legal proceeding." Id. (internal quotation marks and citations omitted).

Second, defendants note that plaintiffs must demonstrate "reasonable reliance" on defendants' actions for equitable estoppel to apply, Zumpano, 6 N.Y.3d at 674, but according to defendants, "[i]n ordinary usage, one does not speak of 'reliance' on a 'threat.'" However, this case presents extraordinary circumstances in which it may be appropriate to find that plaintiffs relied on defendants' threat in deferring litigation if plaintiffs' allegations are accurate. Plaintiffs have alleged that defendants threatened to kill Funk if they sued defendants, and in light of defendants' alleged role in plaintiffs' prior detention and torture, plaintiffs reasonably took defendants' threat seriously and refrained from commencing litigation until both plaintiffs had the protection of United States citizenship.

Third, defendants claim that applying equitable estoppel because of defendants' alleged threats to kill Funk would render the doctrine of duress tolling superfluous. Duress as a basis for tolling applies only when defendants' "conduct constitutes a continuation of the underlying tort" and "when duress is an element of the cause of action alleged." Overall, 52 F.3d at 404. However, "[e]quitable estoppel applies only where the plaintiff can show that 'egregious wrongdoing' by a defendant prevented the plaintiff from bringing suit on a claim of which the plaintiff was aware." Price v. Fox Entm't Grp., Inc., 473 F. Supp. 2d 446, 455 (S.D.N.Y. 2007). Equitable tolling based on a fear of retaliation thus applies only in "unique circumstances" in which duress tolling does not apply, but where "extreme forms of intimidation" by defendants render the strict application of the statute of limitations inappropriate. See Geiss v. Weinstein Co. Holdings LLC, No. 17-cv-9554, 2019 WL 1746009, at *10-11 (S.D.N.Y. April 18, 2019).

Fourth, defendants contend that only Funk can claim equitable estoppel because, even assuming the truth of plaintiff's allegations, defendants' threats were directed at her, not at Zeltser. However, in paragraph 125 of the second amended complaint, plaintiffs have alleged

6

that defendants threatened to kill Funk "as a reprisal for any civil action ever commenced on Plaintiffs' behalf," not just any action taken on Funk's behalf. Equitable tolling does not require Zeltser to sacrifice or put Funk at risk to avoid the application of the statute of limitations.

## II. Defendants' Motion *in Limine*

Defendants have also moved *in limine* to prevent certain claims from being submitted to the jury, and also regarding the admissibility of certain documents and statements into evidence. For the reasons below, defendants' motion is granted in part and denied in part.

### A. Economic Damages

Plaintiffs only seek to recover non-economic damages in this action. Defendants therefore seek to prevent plaintiffs from submitting to the jury certain claims[3] because they assert non-economic damages are unavailable for these claims. Were the Court to grant defendants' motion *in limine*, these claims would be moot because it would be "impossible for a court to grant any effectual relief whatever to" plaintiffs if they prevail on claims for which they have disclaimed the only available relief. Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016), as revised, (Feb. 9, 2016) (internal quotation mark and citation omitted). In effect, defendants seek dismissal of these claims.

However, "an *in limine* pleading is generally not the appropriate vehicle for effecting dismissal of entire claims." New Am. Mktg. FSI LLC v. MGA Entm't, Inc., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016). Rather, the "purpose of *in limine* motions is to enable the Court to rule on disputes over the admissibility of discrete items of evidence." TVT Records v. Island Def Jam Music Grp., 250 F. Supp. 2d 341, 344 (S.D.N.Y. 2003). Parties may also use motions

---

[3] Specifically, defendants seek to keep from the jury plaintiffs' claims for fraud, *prima facie* tort, interference with contract and with prospective contractual relationships, conversion of personal property, and conversion of interests in the entity defendants.

7

*in limine* to "to narrow the issues, shorten the trial, and save costs for the litigants," In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig., 517 F. Supp. 2d 662, 667 n.18 (S.D.N.Y. 2007), but not – as defendants attempt to do here – as a substitute for a dispositive motion. MGA Entm't, Inc., 187 F. Supp. 3d at 481.

Although some courts "have converted motions *in limine* into motions to dismiss or motions for summary judgment and addressed them on the merits" it would be unfair to plaintiffs to do so here. See Pavone v. Puglisi, 08-cv-2389, 2013 WL 245745, at *2 (S.D.N.Y. Jan. 23, 2013) (internal citation and quotation marks omitted). Plaintiffs have not had the opportunity to address defendants' arguments in the context of a dispositive motion, rather than a motion *in limine*. Thus, defendants' request to prevent plaintiffs from submitting certain claims to the jury is denied.

      B.    Motion Regarding Admissibility of Certain Documents

Defendants also seek for the Court to allow them to introduce certain documents into evidence. For the reasons below, defendants' request is granted in part and denied in part.

      1.    Party Admissions

Kay stated to Zeltser: "Because I am very suspicious of the fact that you disappeared for 20 hours. . . . Emik, listen, you have disappeared, Motkin disappeared, Vlada disappeared, where are you all?" Zeltser replied "Ok, I cannot speak right now, I will call back." Next, Kay said that he "would have to call the US Embassy, the British Embassy" and Zeltser responded, "I understood everything, understood everything, all is OK, I will call you back, I have to run now."

Kay also stated to Zeltser: "Listen, Emanuel, I was against that you would go so suddenly – however, you did not listen to me, you went anyway. You are the boss, I cannot order you, you

agreed with Boris, he explained to you why you should go, I do not know, I was not present there, OK?" Zeltser replied, "OK."

Zeltser's statements "Ok, I cannot speak right now, I will call back" and "OK" are admissible under Federal Rule of Evidence 801(d)(2)(A) as statements by an opposing party. Kay's statements led to Zeltser's response, so these statements by Kay "are necessary to provide context for the statements" Zeltser made "and are therefore admissible merely for the fact that they were said, not for their truth." United States v. Asaro, 14-cr-26, 2015 WL 5841804, at *2 (E.D.N.Y. Oct. 7, 2015) (citing United States v. Dupre, 462 F.3d 131, 136-37 (2d Cir. 2006)).

Kay's statements are thus admissible to provide context for Zeltser's statements, not for their truth. Plaintiffs may request a limiting instruction to this effect at trial.

2. Exhibit UU

Defendants seek to introduce the following portions of Exhibit UU as statements in furtherance of a conspiracy.

> EZ: OK, now I am telling you that it is necessary that you get all your things within an hour and come here.
> JK: Wait, where am I supposed to come, and why?
> ZE: To bring the documents.
> JK: What documents?
> \* \* \* \*
> JK: This is why now, in order for me to go anywhere, I should understand where and why I should go, someone must explain it to me.
> \* \* \* \*
> EZ: They are telling me that I am not authorized to decide the issues and issues are to be decided by an authorized person.
> JK: And who is the authorized person?
> EZ: You are the authorized person.
> JK: I see, I am the authorized person. What issues should I talk about?
> EZ: On some other projects.
> JK: And what are the other projects, can you tell me, name them please.
> EZ: Some various projects that are relating to this very project.
>
> \* \* \* \*
>
> EZ: Are you ready to come here?

9

> JK: I am ready to come if you leave that country and I meet you in London, for example, OK, and then I would come, no questions about it.
>
> * * * *
>
> JK: OK, let me get it straight. You are a lawyer, and I think you do not perform your job properly and I have to speak directly to the principal, OK? Principal, as I understand it, is Boris, is it so?
> EZ: The principal is Joseph Kay.
> JK: Wait, from the other side the principal is who, Boris?
> EZ: Boris.
>
> * * * *
>
> EZ: Well, and what is next?
> JK: Next is what needed that you leave that country, I will speak to Boris myself, I will go to him and speak to him. But I will go and speak to him only if they let you go and you will leave. Otherwise I would not go to him.

Defendants claim that the above-quoted conversations were statements in furtherance of a conspiracy. In its November 30, 2018 order, the Court found that defendants have made the threshold showing of the existence of a tortious or criminal conspiracy under Federal Rule of Evidence 801(d)(2)(E) between Zeltser and Kay to gain control of Badri's assets. In light of this finding, the above-quoted portions of Exhibit UU constitute statements in furtherance of a conspiracy because they arguably constitute Zeltser's attempt to update Kay on the status of the conspiracy and persuade Kay to travel to Belarus to obtain Badri's assets.[4]

Further, all of Zeltser's statements in Exhibit UU are admissible under Federal Rule of Evidence 801(d)(2)(A) as statements offered against the opposing party. Kay's statements in Exhibit UU are admissible to provide context for Zeltser's statements but not for their truth –

---

[4] The Court's finding that the portions of Exhibit UU quoted in this section are in furtherance of a conspiracy does not mean that all of the statements in Exhibit UU were in furtherance of a conspiracy. For instance, as plaintiffs observe, Exhibit UU contains the statements addressed in the "Party Admissions" section of this order, which the Court already found were not statements in furtherance of a conspiracy in its November 30, 2018 order. To the extent defendants seek to admit all of Exhibit UU under Federal Rule of Evidence 801(d)(2)(E) because some statements in Exhibit UU were in furtherance of a conspiracy, defendants' request is denied.

unless they are otherwise admissible, e.g., as statements in furtherance of a conspiracy – and plaintiffs may request a limiting instruction to this effect. See Asaro, 2015 WL 5841804, at *2.

        3.     Exhibit X

Defendants also seek to admit Exhibit X if the Court denies their request to admit any of the statements addressed above. Although the Court has admitted the statements addressed above, it did not admit some of Kay's statements for their truth, so the Court considers but rejects defendants' request to admit Exhibit X.

Exhibit X is a report written by Belarusian law enforcement agents about the interrogation of Anatoliy Motkin. As defendants acknowledge, the Court previously excluded this document on May 17, 2018 after plaintiffs showed that Exhibit X was prepared under circumstances that indicate a lack of trustworthiness. Defendants' motion is, once again, essentially a motion for reconsideration that is untimely – it is over half a year late – and fails to meet the strict standard for reconsideration.

As a further form of alternative relief, defendants seek leave to reopen discovery – which is ongoing with respect to limited issues relating to medical examinations but otherwise closed – for defendants to depose Motkin. Defendants claim that Motkin, who resides outside of the United States, declined to appear for a deposition in March 2018, so defendants seek to commence proceedings to compel his deposition. As the Court has already explained, all discovery disputes not raised promptly are waived. Defendants should have brought this discovery dispute to the Court's attention immediately, rather than nine months later. Defendants' request to reopen discovery to compel the deposition of Motkin is therefore denied.

### III. Status of Discovery

The parties have proposed that their deadline to submit a proposed discovery schedule, or a joint discovery dispute letter, be extended from July 8, 2019, the current deadline, to July 16, 2019. The Court notes that the parties have filed numerous letters with the Court requesting an additional week to submit this proposed discovery plan. The Court appreciates that plaintiffs' medical condition complicates scheduling medical examinations. However, filing weekly letters updating the Court on the status of the parties' negotiations is not a good use of time for the parties or the Court, and the parties' practice of filing such letters does not give the Court confidence that the proposed July 16 letter will be the last one.

The Court grants the parties until July 23, 2019 to submit the proposed discovery schedule. The Court expects the parties to have resolved any remaining issues by July 23. To the extent any issues remain, the parties may submit a discovery dispute letter but the parties are cautioned about the elevated likelihood that the Court will sanction at least one party in the event of a discovery dispute.

### CONCLUSION

Defendants' [231] motion to dismiss is denied and defendants' [233] motion *in limine* is granted in part and denied in part. Further, the parties shall submit a proposed discovery schedule by July 23, 2019.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
July 11, 2019