UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                 :

VLADLENA FUNK and EMANUEL ZELTSER, :
                                 :

                 Plaintiffs,      :         **MEMORANDUM & ORDER**
                                 :

       -against-               :         14 Civ. 376 (BMC) (VMS)
                                 :

BELNEFTEKHIM, a/k/a CONCERN     :
BELNEFTEKHIM and BELNEFTEKHIM USA, :
INC.,                               :
                                 :

               Defendants.      :

------------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

      Before this Court is a motion by Defendants Belneftekhim, a/k/a Concern Belneftekhim,

and Belneftekhim USA, Inc. (collectively, "Defendants"), against Vladlena Funk ("Ms. Funk")

and Emanuel Zeltser[1] ("Mr. Zeltser," together with Ms. Funk, "Plaintiffs"), for the exclusion of

certain evidence based on alleged fabrication or spoliation. <u>See</u> ECF No. 277 (the "Motion").[2]

For the reasons set forth below, Defendants' motion seeking sanctions for fabrication of evidence

is denied; Defendants' motion seeking sanctions for spoliation of evidence is granted; and the

contested medical records are excluded from use by Plaintiffs at trial.

## I.     BACKGROUND

      Plaintiffs bring this action against Defendants seeking monetary damages for common

law fraud, assault, battery, false imprisonment, intentional infliction of emotional distress,

tortious interference with contractual relationship, tortious interference with prospective

---

[1] Mr. Zeltser is an attorney and represents both Plaintiffs.

[2] Defendants move for other relief in the Motion. ECF No. 277. The Honorable Brian M. Cogan
referred only the issues of fabrication and spoliation to this Court.

economic advantage, conversion and prima facie tort. <u>See</u> Second Am. Compl., ECF No. 80 ("SAC") at 43-52.[3] These state law claims, removed to federal court, arise out of the alleged abduction and torture of Plaintiffs by Defendants, allegedly acting in concert with the Belarusian KGB and other individuals associated with officials of the Government of Belarus. <u>Id.</u> ¶ 5. Ms. Funk and Mr. Zeltser were detained in March 2008, and released in March 2009 and June 2009, respectively. <u>Id.</u> ¶¶ 11, 14, 31, 72. Plaintiffs allege that during that time they were subjected to physical and psychological mistreatment, and denied access to necessary medication, all of which is alleged to have caused lasting damages. <u>Id.</u> ¶¶ 11, 13, 81-83.

At issue here is evidence relating to Plaintiffs' alleged physical and psychological injuries. Dr. Lev Paukman, disclosed as a specialist in internal medicine and cardiology, <u>see</u> ECF No. 230 at 3, allegedly treated Plaintiffs upon their return from Belarus in 2009, <u>see</u> ECF No. 279-4. In an Order issued by the Honorable Brian M. Cogan, in response to Defendants' motion to preclude Dr. Paukman's testimony based on Plaintiffs' alleged improper disclosure of Dr. Paukman as a witness, the Court found that if Plaintiffs timely provided a summary pursuant to Federal Rule of Civil Procedure ("Rule") 26, Dr. Paukman could testify as a treating physician. ECF No. 230 at 4. Plaintiffs subsequently served a statement pursuant to Rule 26(a)(2)(C). ECF No. 283-1.[4] In response to a subpoena issued by Defendants for Dr. Paukman's records, Mr. Zeltser informed Defendants' counsel that in October 2012 Dr. Paukman's files had been destroyed as a result of a flood caused by Hurricane Sandy, but that

---

[3] For ease of reference, all citations use ECF pagination.

[4] The Rule 26 disclosure includes information regarding anticipated testimony from Dr. Paukman and another physician, Dr. Albert Benchabbat, and fails to differentiate between the two witnesses. <u>See</u> ECF No. 283-1. Plaintiffs have confirmed that they will not call Dr. Benchabbat in their case in chief. <u>See</u> ECF No. 290-3 at 2.

Plaintiffs would produce whatever files survived.[5]  ECF No. 279-3 at 2.  On January 16, 2019,

Plaintiffs provided Defendants with photocopies of documents Bates-stamped PK1-13 (the

"Contested Medical Records").  See ECF Nos. 279-4, 279-5, 278 at 6-7.  Mr. Zeltser's assistant,

Vivian Brusk, emailed a scan of the documents to Defendants' counsel (apparently from Dr.

Paukman's office), stating, "This is what I've been able to recover thus far.  I am pretty sure

there is more but I'll need to spend a couple more days here (Dr P's secretarial staff is not very

cooperative)."  ECF No. 279-5.  The Contested Medical Records consist of reports of four

medical examinations by Dr. Paukman of Plaintiffs in 2009 – one of Ms. Funk and three of Mr.

Zeltser.  See ECF No. 279-4.

　　　After the production, Defendants took Dr. Paukman's deposition in two sessions.  In the

first session, Dr. Paukman testified that he had searched for records in response to the subpoena,

found the Contested Medical Records in his garage, and sent them to Mr. Zeltser.  ECF No. 279-

2 at 3-4, 5:16-6:12; 10, 34:5-37:10.  In the second session, Dr. Paukman testified that he did not

know who had found the Contested Medical Records, that he had not found them himself, and

that he was not sure where they had been found – whether in the garage, the basement or the

office.  ECF No. 279-2 at 43-45, 264:2-270:23; 48-49, 284:22-287:9; 55-56, 325:11-326:24; 57,

---

[5] The 2012 flood damaged Dr. Paukman's Brooklyn office.  Dr. Paukman testified that in 2014 and 2018, he also experienced flooding that damaged records in his Manhattan office.  See ECF No. 279-2 at 12-13, 43:4-47:11.

344:10-16.[6] Dr. Paukman testified that he did not type the Contested Medical Records because he does not type, and he does not know when the notes were typed, but he confirmed that the notes were his words. See id. 49, 287:10-288:16; 56, 326:23-25; 57, 344:17-345:2.

Defendants allege that following Dr. Paukman's depositions, they became suspicious that the Contested Medical Records were fabricated, and they requested production of the original documents (the "Originals"). On March 22, 2019, three weeks after Dr. Paukman's second deposition session, Defendants included a reservation of right to inspect the Originals in a proposed discovery schedule emailed to Mr. Zeltser and others. ECF No. 290-6 at 5 ¶ IV(B). Mr. Zeltser later informed Defendants that the documents had been discarded in April 2019. ECF No. 279-6 at 3. Dr. Paukman submitted a declaration stating:

> The paper records I retained (the documents numbered PK1 – PK13 [the Contested Medical Records]) were found in storage at my Brooklyn office. However, the documents that were found in storage were not my original records. They were printouts or photocopies of my original records. The original records were electronic files stores on a computer. But the computer was discarded and replaced with a new computer before this lawsuit began as part of a periodic upgrade. The paper records I retained . . . were merely copies of those electronic records. Those records were in storage in the garage of my Brooklyn medical center along with many old patient files which were due to be discarded. Those old patient files, including the records of Mr. Zeltser and Ms. Funk . . . were all discarded in April 2019.

ECF No. 283 at ¶¶ 3-4. Defendants note that Dr. Paukman had testified during his deposition, in

---

[6] It is not clear from the record before the Court who found the original documents because Dr. Paukman's testimony is unclear and, at times, conflicting. Id. Based on documentary evidence, it may be that Dr. Zeltser's assistant, Vivian Brusk, found the original records. See ECF No. 279-5 (email from Ms. Brusk to Defendants' counsel stating, "This is what I've been able to recover thus far. I am pretty sure there is more but I'll need to spend a couple more days here (Dr P's secretarial staff is not very cooperative)." (emphasis added)); ECF No. 290-4 (email from Ms. Brusk to Defendants' counsel regarding Dr. Paukman, stating, "I am over at Dr. P. helping to recover docs."); ECF No. 290-5 (email from Mr. Zeltser to Ms. Brusk and Defendants' counsel stating, "Whatever Vivian finds in the next few days, she will send over right away." (emphasis added)).

conflict with his declaration, that his office did not have electronic records in 2009, when the medical examinations on which the Contested Medical Records were based took place, and that his office only began using electronic records approximately two years prior to the deposition – in other words, in 2017. ECF No. 279-2 at 56, 328:12-22; see Defs.' Reply Mem., ECF No. 289 at 5.

## II. Motion

Defendants move for the Court to find that the Contested Medical Records were fabricated and, at trial, to exclude them, Dr. Paukman's testimony, and Plaintiffs' testimony about the alleged examinations underlying the Contested Medical Records. They also move for the Court to instruct the jury to take as an established fact that Plaintiffs did not seek medical attention upon their return from Belarus. See Defs.' Mem., ECF No. 278 at 11. Defendants argue that the Court should make this finding because (1) Plaintiffs have strong motive to fabricate evidence because they have no other admissible documentary corroboration for their testimony regarding the abuse they allegedly suffered in Belarus; (2) it is implausible "that these four reports, so favorable to Plaintiffs, just happened to survive the flood"; (3) Defendants cannot review any other potentially inconsistent records, because all or many of Dr. Paukman's patient files were lost in the flood;[7] and (4) Defendants cannot verify that the photocopies provided of the Contested Medical Records are copies of physical documents found in Dr. Paukman's storage because the alleged Originals were discarded during this litigation, after Defendants sent their reservation of their right to review them. Defs.' Mem. at 8-10. Defendants argue in the

---

[7] Plaintiffs originally told Defendants in an email that "in October 2012, all [Dr. Paukman's] files were destroyed by [a] flood," ECF No. 279-3, and Dr. Paukman testified that the flood in 2012 "killed all the records," ECF No. 284-2 at 10, 45:17-18. Later, in a declaration, Mr. Zeltser stated that Dr. Paukman lost "many of his patient records" in the 2012 flood. ECF No. 284 at 3 ¶ 9. What files relevant to this litigation, if any, were lost in the 2012 flood is unclear.

alternative that the Court should find that Plaintiffs spoliated evidence, and impose the above-proposed sanctions on that basis. Id. at 12.[8]

The Court held a telephone conference during which counsel stated that they would rest on their paper submissions regarding the alleged fabrication and spoliation of evidence, and declined to request a hearing or oral argument. See ECF No. 291.

## III. ANALYSIS

### A. Fabrication

"If a party commits fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process." Hargrove v. Riley, No. 04 Civ. 4587 (DGT) (LB), 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007). Fraud on the court is "fraud which seriously affects the integrity of the normal process of adjudication." McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002) (quoting Gleason v. Jandrucko, 860 F.2d 556, 559 (2d Cir. 1988)). Fabrication of evidence can constitute fraud on the court. See Hargrove, 2007 WL 389003, at *11 (finding the plaintiff "perpetrated a fraud on the court through his submission of fraudulent documents and sworn affirmations of those documents' authenticity"). Sanctions for such conduct must be based on "clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by unfairly hampering the presentation of the opposing party's claim or defense." Id. (internal quotation

---

[8] Plaintiffs take the position that the documents discarded in April 2019 were not originals because the originals were electronic. Pls.' Opp'n, ECF No. 282 at 16 & n.6. This is an unrealistic interpretation of an "original." Printed copies of the computer-generated documents that were put into Dr. Paukman's hardcopy files can be considered originals for purposes of this motion, particularly because the electronic versions were allegedly destroyed many years ago. See Fed. R. Civ. P. 1001(d) ("For electronically stored information, 'original' means any printout – or other output readable by sight – if it accurately reflects the information.").

6

marks & alterations omitted).   "Under this exacting standard, the Court may only find fraud upon the court based on evidence that produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."  Esposito v. Suffolk Cty. Cmty. Coll., No. 16 Civ. 4833 (ADS) (ARL), 2019 WL 1044099, at *2 (E.D.N.Y. Mar. 4, 2019) ("Esposito I") (internal quotation marks, citations & alterations omitted).  In other words, the moving party must submit proof that shows the alleged fabrication is "highly probable" and that "leave[s] no substantial doubt" as to the alleged fabrication.  Esposito I, 2019 WL 1044099, at *2.

Defendants argue that there is clear and convincing evidence that Plaintiffs committed fraud on the Court through submission of the allegedly falsified medical records.  See Defs.' Mem. at 8-9.  They argue that Plaintiffs have strong motive to fabricate the evidence because they have "no other documentary corroboration for their testimony that they suffered torture, beatings, and a miscarriage in Belarus."  Id. at 9.  The subpoena issued to Dr. Paukman presented an opportunity, they argue, for Plaintiffs to "plug that hole in their case."  Id.  Defendants further argue that the claim that these four reports from 2009, which are favorable to Plaintiffs, survived the flooding at Dr. Paukman's office, while all or many of his records, see supra n.7, were destroyed is "much too convenient," as is the fact that the Originals were then discarded after the inspection request such that they could not be inspected.  Defs.' Mem. at 9-10.

In a recent instructive decision in this District, the court considered allegations that notes written in a disability discrimination case by two of the plaintiff's doctors were fabricated.  See generally, Esposito I, 2019 WL 1044099.  With respect to the first doctor, Dr. Campo, the note contained an address in the header that did not belong to the doctor's office until years after the

note was allegedly written, and the doctor expressly testified that he did not author the note. Id. at *3. With respect to the second doctor, Dr. DiCanio, the defendants alleged that his notes were fabricated based on the fact that they were omitted from the doctor's certified medical records; one of the notes was addressed to an employee who was not a supervisor at the time the note was allegedly written and therefore was not a proper recipient; one of the notes contained an incorrect fax number in the letterhead; and none of the notes was provided to the defendants prior to the filing of the plaintiff's EEOC claim. Id. at *4. Dr. DiCanio did testify that he recognized the notes "as being from his office" and that the notes bore his signature. Id. at *5 (alterations omitted).

With respect to both doctors' notes, the court held an evidentiary hearing and found that the defendants met their burden of showing fabrication by clear and convincing evidence as to Dr. Campo's notes, but not as to Dr. DiCanio's notes. See Esposito v. Suffolk Cty. Comm. Coll., 390 F. Supp. 3d 428, 430 (E.D.N.Y. 2019) ("Esposito II"). Prior to the evidentiary hearing, the court stated that it was "confident that it possesse[d] sufficient evidence to find that the Plaintiff forged Dr. Campo's notes" in light of the direct evidence of falsity (the address in the letterhead that did not exist in connection with the doctor's office at the time the note was written) and Dr. Campo's testimony that he did not write the note. See Esposito I, 2019 WL 1044099, at *3-4. In contrast, the court found that the defendants' argument about fabrication in connection with Dr. DiCanio's notes was inadequate to meet the clear and convincing burden of proof. Id. at *5. The court stated that, "[w]hile the Defendants have cast some doubt on the authenticity of the documents, the flaws they identified are not so significant that the most probable explanation is forgery." Id. The court's initial determinations were borne out by the evidentiary hearing, and Dr. Campo's notes were found to be fabricated and were excluded, while Dr. DiCanio's were

not.  See Esposito II, 390 F. Supp. 3d at 430; see also Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 406 (S.D.N.Y. 2010) (finding that the plaintiff failed to meet its burden of demonstrating fabrication by clear and convincing evidence where the defendants presented a "colorable counter-narrative," despite gaps in that counter-narrative).

Here, as with the allegations regarding Dr. DiCanio's notes in Esposito I, Defendants' allegations on the papers[9] regarding fabrication "cast doubt on the authenticity" of the Contested Medical Records, but on the current record, the Court cannot find that "the most probable explanation is forgery." Esposito I, 2019 WL 1044099, at *5.  The circumstances surrounding the discovery of the Contested Medical Records, especially the facts that they survived flooding that destroyed all or many of Dr. Paukman's other records and that Dr. Paukman does not recall from where they were recovered, does give the Court significant pause.  Nonetheless, Defendants have not met the "exacting standard" of showing by clear and convincing evidence that the documents are fabricated.  Esposito I, 2019 WL 1044099, at *2.  The fact that a party has a motivation to bolster his or her case is not a unique circumstance.  That the reports corroborate Plaintiffs' assertions also does not provide clear and convincing evidence of fabrication, as that may equally result from the veracity of Plaintiffs' account.  Of great significance is that Dr. Paukman has testified that the Contested Medical Records are his own reports.  See ECF No. 279-2 at 44, 267:8-24; ECF No. 283 at 1.  Unlike in Esposito II as to Dr. Campo's alleged records, Defendants have not offered any evidence or argument based on the contents of the documents to suggest fabrication of the information contained therein.

In the cases relied on by Defendants in which fabrication of evidence was found, there was evidence of more than suspicious circumstances that met the exacting standard of proof.

---

[9] Defendants declined an opportunity to present additional evidence at a hearing.  ECF No. 291.

See, e.g., Hargrove, 2007 WL 389003, at *4, 11 (finding notarized grievance forms were fraudulent where a visual inspection suggested they were photocopies of legitimate forms; the notaries testified that they did not notarize the relevant documents; and the notary log book did not show notarizations of the relevant documents); McMunn, 191 F. Supp. 2d at 448 (finding that the plaintiff provided a variety of fraudulent statements to the court, supported by substantial evidence, including, inter alia, video tapes proving misstatements, documentary proof of the existence of certain credit cards the plaintiff denied owning, and expert testimony regarding the doctoring of certain audiotapes submitted to the court).

For the foregoing reasons, the Court finds that Defendants have not met their burden of proving by clear and convincing evidence that Plaintiffs fabricated the Contested Medical Records. Defendants' motion for sanctions based on fabrication of evidence is denied.

### B. Spoliation

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). "The party seeking discovery sanctions on the basis of spoliation must show by a preponderance of the evidence: '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" Klipsch Grp., Inc. v. ePRO E-Commerce Ltd., 880 F.3d 620, 628 (2d Cir. 2018) (quoting Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 162 (2d Cir. 2012) (internal quotation marks omitted)). In addition, where the spoliator acted only negligently, the party seeking sanctions "must demonstrate prejudice in

order for the Court to consider imposing an extreme sanction such as an adverse inference instruction." <u>Distefano v. Law Offices of Barbara H. Katsos, PC</u>, No. 11 Civ. 2893 (PKC) (AKT), 2017 WL 1968278, at *26 (E.D.N.Y. May 11, 2017).

### 1. Control And Duty To Preserve

"Identifying the boundaries of the duty to preserve involves two related inquiries: <u>when</u> does the duty to preserve attach, and <u>what</u> evidence must be preserved?" <u>Luellen v. Hodge</u>, No. 11 Civ. 6144 (MWP), 2014 WL 1315317, at *5 (W.D.N.Y. Mar. 28, 2014) (quoting <u>Zubulake v. UBS Warburg LLC</u>, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." <u>Fujitsu Ltd. v. Fed. Exp. Corp.</u>, 247 F.3d 423, 436 (2d Cir. 2001). The "duty to preserve extends to documents in the possession of third parties so long as [a party to the litigation] has control over the documents." <u>Luellen</u>, 2014 WL 1315317, at *5. The concept of control is to be construed broadly, and "[d]ocuments are considered to be under a party's control if the party has the practical ability to obtain the documents from another, irrespective of his legal entitlement." <u>Ronnie Van Zant, Inc. v. Pyle</u>, 270 F. Supp. 3d 656, 669 (S.D.N.Y. 2017) (internal quotation marks & citation omitted), <u>rev'd on other grounds</u>, 906 F.3d 253 (2d Cir. 2018).

Although there is "not an exact science" to determining control, the record and "common sense" demonstrate that the Contested Medical Records were within Plaintiffs' control. <u>See</u> <u>id.</u> at 669-70. First, Plaintiffs coordinated the production of the Contested Medical Records, and emails indicate that Plaintiffs were in physical control of the Originals during this litigation, at least for some period during the recovery process, either by Ms. Brusk finding them or Dr. Paukman sending them to Mr. Zeltser. <u>See</u> ECF No. 279-2 at 10, 37:6-10 (Dr. Paukman testified

that in response to Defendants' subpoena, "I sent my records to Mr. Zeltser and he said that he is going to send it to the judge."); ECF No. 279-3 (email from Mr. Zeltser to Defendants' counsel informing Defendants that a flood destroyed all of Dr. Paukman's files in 2012, and coordinating production by Plaintiffs of any surviving files); ECF No. 279-5 (email from Mr. Zeltser's assistant Ms. Brusk to Defendants' counsel stating, "This is what I've been able to recover thus far. I am pretty sure there is more but I'll need to spend a couple more days here (Dr P's secretarial staff is not very cooperative)."); ECF No. 290-4 (email from Ms. Brusk to Defendants' counsel stating, "I am over at Dr. P. helping to recover docs."); ECF No. 290-5 (email from Mr. Zeltser to Ms. Brusk and Defendants' counsel stating, "I would set the deposition date now so Dr. Paukman can plan his schedule, too. Whatever Vivian [Brusk] finds in the next few days, she will send over right away."). Second, Dr. Paukman testified that he is a close friend of Mr. Zeltser, and that he has known and treated Mr. Zeltser for many years. ECF No. 279-2 at 7, 24:23-25:20. Third, Dr. Paukman was aware of this litigation and had participated in this litigation as Plaintiffs' witness, sitting for two deposition sessions and responding to a subpoena. See ECF Nos. 279-1, 279-2. During his deposition, Plaintiffs' medical records, and specifically the Contested Medical Records, were discussed extensively, although some of Dr. Paukman's testimony was conflicting. See generally ECF No. 279-2.

Taken together, this information demonstrates that Plaintiffs had the practical ability to direct Dr. Paukman to preserve the Originals or to preserve them themselves; therefore, they had control over the Originals for purposes of a spoliation analysis. See Ronnie Van Zant, 270 F. Supp. 3d at 669 (finding a non-party's text messages were, practically speaking, under the defendant's control where the non-party was contracted by the defendant to work on a film underlying the litigation, had a financial investment in the litigation as a result of his work on the

film, worked closely with the defendant for a year, and participated in the litigation by providing documents and sitting for a deposition); Luellen, 2014 WL 1315317, at *6 (finding that the defendant had control over documents held by his bank because "a common sense understanding of the relationship between an account holder and a financial institution leads [the court] to conclude that [the defendant] had sufficient control over the documents to be able to direct their preservation"); see also Bowman v. Am. Med. Sys., Inc., No. 96 Civ. 7871 (HJH), 1998 WL 721079, at *1, 4-5 (E.D. Pa. Oct. 9, 1998) (finding that the plaintiff in a products liability case was "in no way relieve[d of] responsibility" for spoliation of an allegedly defective prosthesis that was removed from his body where he allegedly requested that his doctor preserve the removed prothesis, but his doctor failed to do so). At a minimum, Plaintiffs had a duty to direct Dr. Paukman to preserve the Originals after March 22, 2019, when they received notice that Defendants reserved their right to inspect the Originals. See ECF No. 290-6 (March 22, 2019 email from Defendants' counsel to Mr. Zeltser and others, attaching a proposed stipulation that included the statement, "Defendants reserve the right to request examination/inspection of the originals of the four medical evaluations of Plaintiffs provided by Dr. Paukman, identified as bates numbers PK 1 – PK 13 . . . ."). Plaintiffs have not offered evidence that they made such a request and, according to Dr. Paukman, the Originals were destroyed in April 2019, shortly after Defendants provided the notice. See ECF No. 283 ¶ 4. In fact, Dr. Paukman's testimony that the Originals were destroyed along with other old patient files in a routine destruction practice (id. ¶ 4) suggests that no particular care was taken to preserve or segregate the documents relevant to this litigation.

Plaintiffs correctly note that there is generally no obligation to preserve identical copies of the same document, and cite to this Court's decision in Caltenco v. G.H. Food, Inc., 16 Civ.

1705 (LDH) (VMS), 2018 WL 1788147 (E.D.N.Y. Mar. 7, 2018), for the proposition that an original document need not be maintained for months after copies of the original were produced in discovery.  See Pls.' Opp'n at 17-18.  See Zubulake, 220 F.R.D. at 218.  The decision in Caltenco is inapposite.  There, this Court stated that the duty to preserve evidence is not indefinite and expires "once a party has had an adequate and meaningful opportunity to inspect the evidence."  Caltenco, 2018 WL 1788147, at *5 (internal quotation marks omitted).  Here, shortly after receiving the Contested Medical Records, Defendants deposed Dr. Paukman.  During Dr. Paukman's deposition, the Contested Medical Records were discussed at length and, within weeks of his second deposition session, Defendants provided notice of their desire to inspect the Originals.  See ECF No. 290-6.  This interest arose from a concern about the potential fabrication of the copies, making the Originals, in addition to the copies provided, relevant to the litigation.  Of great importance is that the Originals were destroyed after Plaintiffs were given notice of Defendants' desire to inspect the Originals, when Plaintiffs were or should have been fully aware that the Originals, not just the copies, were relevant to the litigation.

### 2. Culpable State Of Mind

Sanctions for spoliation of evidence "will only be warranted if the party responsible for the loss had a sufficiently culpable state of mind."  Distefano, 2017 WL 1968278, at *17 (internal quotation marks omitted).  "[T]he culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently."  Residential Funding Corp., 306 F.3d at 108 (internal quotation marks, citations & alterations omitted); see Zubulake, 220 F.R.D. at 220 ("[A] culpable state of mind for

purposes of a spoliation inference includes ordinary negligence.").[10] "In the discovery context, negligence is a failure to conform to the standard of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial proceeding." Distefano, 2017 WL 1968278, at *18; see Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 464, 471 (S.D.N.Y. 2010) ("[G]ross negligence . . . differs from ordinary negligence only in degree, and not in kind."; "[T]he following failures support a finding of gross negligence, when the duty to preserve has attached: to issue a written litigation hold; to identify all of the key players and to ensure that their electronic and paper records are preserved; to cease the deletion of email or to preserve the records of former employees that are in a party's possession, custody, or control; and to preserve backup tapes when they are the sole source of relevant information or when they relate to key players, if the relevant information maintained by those players is not obtainable from readily accessible sources."), abrogated on other grounds by Chin v. Port Auth. of NY & NJ, 685 F.3d 135 (2d Cir. 2012). "[E]ach party should bear the risk of its own negligence." Residential Funding Corp., 306 F.3d at 108. In determining culpability, a case-by-case approach is appropriate because failures to produce or preserve evidence occur "along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality." Id.

---

[10] This standard was amended by Rule 37(e) in December 2015 with respect to electronically stored information ("ESI"). The documents at issue here are not ESI, and neither party has argued that Rule 37(e) applies. See Fed. R. Civ. P. 37(e) ("Failure to Preserve Electronically Stored Information"); Man Zhang v. City of New York, No. 17 Civ. 5415 (JFK) (OTW), 2019 WL 3936767, at *4 (S.D.N.Y. Aug. 20, 2019) ("The traditional spoliation standards found in Residential Funding still apply to non-ESI evidence."); Tchatat v. O'Hara, 249 F. Supp. 3d 701, 706 n.2 (S.D.N.Y. 2017) (considering a spoliation motion relating to non-ESI and noting that Rule 37(e) "governs the failure to preserve [ESI]", and neither party argued that Rule 37(e) applied); Bagley v. Yale Univ., 318 F.R.D. 234, 237 (D. Ct. 2016) ("[N]ew Rule 37(e)(2) applies by its own terms only to [ESI] . . . [and] would seem not to apply at all to more old-fashioned documentary evidence.").

Here, Plaintiffs' failure to instruct Dr. Paukman to preserve the Originals once they had been located but before Defendants had a reasonable chance to review them constituted, at a minimum, negligence, "which is sufficient to permit the imposition of sanctions." Luellen, 2014 WL 1315317, at *7 (finding the plaintiff's failure to direct his bank to preserve his account records constituted negligence sufficient to permit imposition of sanctions for spoliation); see Pension Comm. of Univ. of Montreal, 685 F. Supp. 2d at 464 ("A failure to preserve evidence resulting in the loss or destruction of relevant information is surely negligent, and, depending on the circumstances, may be grossly negligent or willful."); Zubulake, 220 F.R.D. at 220 (finding that, "[o]nce the duty to preserve attaches, any destruction of documents is, at a minimum, negligent" as long as the destruction is not caused by events outside of the party's control). The destruction of the Originals, after Plaintiffs received notice of Defendants' reservation of right to review them, was more than negligent. Because Plaintiffs were on clear notice that the Originals were requested in the litigation, their failure to have Dr. Paukman preserve the Originals was grossly negligent. See Zubulake, 220 F.R.D. at 221 (finding that where defendants were unquestionably on notice of their duty to preserve backup tapes, failure to preserve those tapes "was grossly negligent, if not reckless"); Pension Comm. of Univ. of Montreal, 685 F. Supp. 2d at 471 ("After a discovery duty is well established, the failure to adhere to contemporary standards can be considered gross negligence.").

### 3. Relevance And Prejudice

When a party seeks severe sanctions "such as dismissal, preclusion, or the imposition of an adverse inference," the court must consider "whether any missing evidence was relevant and whether the innocent party has suffered prejudice as a result of the loss of evidence." Pension Comm. of Univ. of Montreal, 685 F. Supp. 2d at 467. "Relevance and prejudice may be

presumed when the spoliating party acted in bad faith or in a grossly negligent manner." <u>Id.</u>;
<u>see</u> <u>Distefano</u>, 2017 WL 1968278, at *22, 25.  When a spoliating party was only negligent,
however, the moving party must show that the materials were relevant and that the innocent
party was prejudiced.  <u>See</u> <u>Residential Funding Corp.</u>, 306 F.3d at 109; <u>Distefano</u>, 2017 WL
1968278, at *22, 25 ("[W]here the spoliating party has acted only negligently, the moving party
must make a showing that the lost materials were relevant."; "Relevant in the context of a
spoliation motion means something more than sufficiently probative to satisfy Rule 401 . . . The
innocent party must also show that . . . [it] is prejudiced without the evidence."  (internal
quotation marks & citations omitted)).  "The innocent party may do so by adducing sufficient
evidence from which a reasonable trier of fact could infer that the destroyed or unavailable
evidence would have been of the nature alleged by the party affected by its destruction."
<u>Pension Comm. of Univ. of Montreal</u>, 685 F. Supp. 2d at 468 (internal quotation marks &
alterations omitted).

      Here, because Plaintiffs conduct was grossly negligent, the relevance of the Originals and
prejudice to Defendants is presumed.  <u>Id.</u> at 467.  Even assuming the destruction of the Originals
were merely negligent, sanctions would still be appropriate because Defendants have adequately
shown that the Originals were relevant and, by their destruction, Defendants have been
prejudiced.  Had Defendants been able to inspect the Originals, they could have searched for
signs (or lack-thereof) of aging on the documents and for signs that the documents went through
a flood (<u>e.g.</u>, discoloration, normal wear-and-tear, watermark, or mold).  <u>See</u> Pls.' Opp'n at 19
(citing Dr. Paukman's declaration and stating that the Originals "were contained in water-
damaged cartons and were surrounded with documents that appeared to be infested with mold").
Defendants have not demonstrated by clear and convincing evidence that the Contested Medical

Records were fabricated, but they raised sufficient concern – based on the ambiguity surrounding who found the Originals and where they were found; the fact that the Originals, which are helpful to Plaintiffs, survived a flood that destroyed all or many of Dr. Paukman's medical records; the inconsistency between Dr. Paukman's assertion that the actual original documents were electronic and his assertion that the office did not use electronic files until many years after the date of the Contested Medical Records; and the timing of the alleged destruction of the Originals, immediately following Defendants' notice of intent to inspect them – to make the Originals relevant as to cross-examination and possible impeachment of Dr. Paukman at trial. Without the Originals, Defendants will be hindered in their ability to possibly show that Dr. Paukman had engaged in forgery, and in turn, to undermine his credibility as to his other testimony. Nonetheless, it is important to note that the prejudice is relatively minor in that it primarily concerns impeachment, rather than a substantive aspect of the proof in the case.

Defendants' Motion for a finding of spoliation of evidence is therefore granted, and the Court must assess what sanctions are appropriate.

### C. Sanctions

"[A] district court has broad discretion in crafting a proper sanction for spoliation." West, 167 F.3d at 779. The authority to sanction litigants for spoliation arises, inter alia, under the court's inherent powers and such sanctions are assessed on a case-by-case basis. See Zubulake, 220 F.R.D. at 216. An appropriate sanction upon a finding of spoliation "should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine. The sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful

destruction of evidence by the opposing party." West, 167 F.3d at 779 (internal quotation marks & citations omitted). The Court "should impose the least harsh sanction that can provide an adequate remedy." Pension Comm. of Univ. of Montreal, 685 F. Supp. 2d at 470.

Here, the most appropriate sanction is exclusion of the Contested Medical Records from Plaintiffs' use at trial. This sanction is adequate to deter parties from engaging in spoliation and to prevent the risk of fabricated evidence being used to support Plaintiffs' case. Defendants' interests are protected because Plaintiffs will not be able to offer these records about which Defendants would be somewhat limited in their ability to offer a vigorous cross-examination. Defendants would be free to inquire of Dr. Paukman about the alleged examinations and his medical opinions without Dr. Paukman being able to refresh his recollection with the Contested Medical Records, to explain by reference to them how he can recall examinations done more than 10 years ago, or to show that his examinations conformed to standard medical practices by reference to the records. In fact, this exclusion sanction is consistent with relief requested by Defendants based on the alternate grounds of authentication, best evidence, hearsay and unfair prejudice.[11] See Defs.' Mem., ECF No. 278 at 19-22.

At the same time, this sanction is not overly severe because Plaintiffs' case does not rest primarily on these documents. In fact, Plaintiffs stated that they do not intend to use the Contested Medical Records in their case in chief, regardless of the outcome of this motion. See Pls.' Opp'n at 9 ("Plaintiffs have not identified the [Contested] Medical Records as trial exhibits."). Accordingly, preclusion is "the least harsh sanction that can provide an adequate

---

[11] In some cases, courts provide sanctions in the alternative—that is, one sanction if the injured party were to seek the exclusion of evidence at trial, and another if the injured party were to seek to offer evidence at trial—so that the parties may flexibly develop their trial strategies. In this case, Defendants have only sought exclusion of the records, so the Court does not provide an alternate sanction.

remedy" to Defendants.  <u>Pension Comm. of Univ. of Montreal</u>, 685 F. Supp. 2d at 470.

Defendants also seek exclusion of Dr. Paukman's testimony at trial, exclusion of Plaintiffs' testimony at trial about the medical examinations underlying the Contested Medical Records, and an instruction that the jury take it as established that Plaintiffs did not seek medical attention upon their return from Belarus.  <u>See</u> Defs.' Mem. at 11.  This Court does not find sanctions of this severity to be appropriate on this Motion.  The absence of the Original Contested Medical Records most directly relates to Defendants' ability to question Dr. Paukman about the records themselves, and to possibly impeach his credibility generally; their absence is not central to a cross-examination of Dr. Paukman about the medical examinations or his medical opinions.  Thus, exclusion of the copies of the records resolves Defendants' concern.  It would be overly punitive to exclude evidence of the medical examinations themselves and Dr. Paukman's diagnosis which may be important evidence for Plaintiffs as a contemporaneous record that their injuries were significant enough to prompt them to seek medical care.

This Court notes that Defendants' Motion with respect to certain of Dr. Paukman's and Plaintiffs' testimony at trial remains open before the trial judge as it has not been referred to this Court.

**IV.    CONCLUSION**

For the reasons stated above, Defendants' motion for sanctions against Plaintiffs for fabrication of evidence is denied.  Defendants' motion for sanctions against Plaintiffs for spoliation of evidence is granted.  The Contested Medical Records are excluded from use by Plaintiffs at trial.

Dated:  Brooklyn, New York
       January 17, 2019

_Vera M. Scanlon_
VERA M. SCANLON
United States Magistrate Judge