UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

VLADLENA FUNK and EMANUEL
ZELTSER,

                        Plaintiffs,

           - against -

BELNEFTEKHIM and BELNEFTEKHIM
USA, INC.,

                    Defendants.

-------------------------------------------------------- X

**MEMORANDUM DECISION
AND ORDER**

14-cv-376 (BMC)

**COGAN**, District Judge.

       Before me is plaintiffs' motion for reconsideration of my September 22, 2020 order

granting partial summary judgment to defendants (the "Summary Judgment Order"). It disposed

of six of plaintiffs' nine claims, specifically, the ones for fraud, *prima facie* tort, tortious

interference with contract, tortious interference with prospective economic advantage, and two

counts of conversion. I concluded that these claims were not viable because plaintiffs had

expressly conceded that they were "seek[ing] only non-economic damages," which they defined

as damages for emotional distress.

       The parties have since brought to my attention Yukos Capital S.A.R.L. v. Feldman, 977

F.3d 216 (2d Cir. 2020). That case cautioned against conflating "damage" (which is an element

of a tort and represents the harm suffered) and "damages" (which is a remedy and refers to

compensation for harm suffered). Based on that distinction, the Second Circuit held that the

plaintiffs could use economic harm to establish the "damage" element, and could then recover

nominal damages, even though the plaintiffs previously stated that they were not seeking "compensatory damages."

Plaintiffs argue that they, too, can use economic harm to establish "damage" even though they previously stated that they were seeking only non-economic "damages."  Plaintiffs thus plan to use economic harm to establish "damage" and to recover nominal (as well as punitive) damages based on that harm.  As interpreted by Yukos, New York law does not stand in their way.

But plaintiffs did not disclose this theory of "damage" and "damages" until well after discovery had closed.  In fact, I had denied defendants' motion for sanctions against plaintiffs for failing to disclose any economic damage on the ground plaintiffs acknowledged there was no such damage.  But even under Yukos, plaintiffs were still required to have disclosed both economic "damage" and "damages," and they failed to do either.

Therefore, under Rule 37 of the Federal Rules of Civil Procedure, I will impose two sanctions.  First, I will limit plaintiffs to establishing the "damage" element through non-economic harm.  Second, I will limit plaintiffs to recovering only non-economic damages. Plaintiffs may not use economic harm to establish "damage," and they may not recover nominal damages.

These limitations foreclose all but two of the claims at issue.  Non-economic harm cannot establish the "damage" element for fraud and *prima facie* tort, and plaintiffs cannot recover non-economic "damages" for conversion.  However, non-economic harm can establish the "damage" element for the two tortious interference claims, and a plaintiff can recover "damages" based on that harm.  The portion of the Summary Judgment Order that dismissed the two tortious interference claims is therefore vacated.

2

**BACKGROUND**

In the late 1990s and early 2000s, plaintiff Emanuel Zeltser represented a group of investors who purchased stock in defendant Belneftekhim, a Belarusian petrochemical cooperative.  Belneftekhim abrogated the agreement, and Zeltser threatened legal action. Attempting to resolve the dispute, Zeltser and his legal assistant, fellow plaintiff Vladlena Funk, flew to London to meet with Belneftekhim representatives.  There, plaintiffs allege, Belneftekhim orchestrated a scheme in which they were drugged, kidnapped, and flown to Belarus.  Confined in a detention center for over a year, plaintiffs were allegedly tortured.  The United States government eventually secured their release.  This suit followed.[1]

After several years of litigation, defendants filed a motion *in limine*, seeking to preclude plaintiffs from offering evidence of damages at trial.  Defendants claimed that plaintiffs failed to disclose certain damages-related materials under Rule 26 of the Federal Rules of Civil Procedure.  Defendants further claimed that plaintiffs had failed to respond to a Rule 34 request for "[a]ll documents concerning each item of damages claimed."  Plaintiffs conceded that they had failed to produce these materials, yet they maintained that this failure did not run afoul of their discovery obligations because they were "seek[ing] only non-economic damages."  In reply, defendants indicated that they did "not object, under [Rule 26], to the admissibility of testimony by [p]laintiffs," but defendants asked the Court to "bind [p]laintiffs to . . . seek[ing] only non-economic damages.'"

In an order dated November 30, 2018, I observed that "defendants effectively withdrew their motion to preclude evidence of damages except as to plaintiffs' damages for conversion of personal property."  Funk v. Belneftekhim, No. 14-cv-0376, 2018 WL 11169575, at *1

---

[1] The other defendant is Belneftekhim's U.S. subsidiary, Belneftekhim USA, Inc.

(E.D.N.Y. Nov. 30, 2018).  I then granted the motion *in limine* as to that conversion claim,

because plaintiffs had failed to disclose the value of the property at issue.

The next month, defendants filed another motion *in limine*.  Citing plaintiffs' statement

that they would seek only non-economic damages, defendants argued that plaintiffs could not

submit certain claims to the jury.  Specifically, defendants targeted the claims for fraud, *prima*

*facie* tort, tortious interference with contract, tortious interference with prospective economic

advantage, and conversion.  According to defendants, plaintiffs could not recover anything for

these claims because the claims allow for recovery of only pecuniary damages.  In an order dated

July 11, 2019, I noted that, "[w]ere the Court to grant defendants' motion *in limine*, these claims

would be moot because it would be 'impossible for a court to grant any effectual relief whatever

to' plaintiffs if they prevail on claims for which they have disclaimed the only available relief."

Funk, 2019 WL 3035124, at *4 (quoting Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 161,

(2016).  Because "an *in limine* pleading is generally not the appropriate vehicle for effecting

dismissal of entire claims," I denied the motion.  Id. (quoting New Am. Mktg. FSI, LLC v. MGA

Entm't, Inc., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016)).

Defendants then brought a motion for partial summary judgment based on the same

arguments.  Notably, defendants did not submit a statement of the undisputed material facts as

the local rules require.  Defendants instead stated that the "evidentiary basis for [their] motion

[was] straightforward and clear," as it "turn[ed] entirely on the legal consequences of a single

concession," namely, plaintiffs' statement that they were seeking only non-economic damages.

Defendants did not put forth any alternative arguments.  I granted summary judgment on each

claim.  Funk, 2020 WL 5645190, at *2–6.

**DISCUSSION**

**I.      Reconsideration Based on <u>Yukos</u>**

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." <u>Drapkin v. Mafco Consol. Grp., Inc.</u>, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (quotation omitted).  "Such motions are properly granted only if there is a showing of: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) a need to correct a clear error or prevent manifest injustice." <u>Giuffre v. Maxwell</u>, No. 15-cv-7433, 2020 WL 917057, at *1 (S.D.N.Y. Feb. 26, 2020) (quotation omitted).  Here, plaintiffs contend that <u>Yukos Capital S.A.R.L. v. Feldman</u>, 977 F.3d 216 (2d Cir. 2020), decided two weeks after the summary judgment order, constitutes an intervening change in controlling law.  Defendants do not contest the propriety of a motion for reconsideration in these circumstances.  In fact, defendants were the ones who brought the case to my attention.

At first glance, neither the facts nor the holding in <u>Yukos</u> are directly on point. Coincidentally, the case involved an American lawyer who became embroiled in a dispute involving an Eastern European energy company.  Yet the lawyer worked as a corporate secretary for several related entities, and they eventually sued him for breach of fiduciary duty, alleging that he stole money through three distinct schemes.  Those entities did not seek compensatory damages for the alleged breaches, and the district court awarded nominal damages.  The lawyer argued that he should have been granted judgment as a matter of law.  The Second Circuit agreed in part.  Although "nominal damages cannot satisfy the 'damage' element of a breach of fiduciary duty claim," the court explained, a plaintiff may still satisfy that element by showing "compensation paid by a principal to a faithless servant."

5

Of greater relevance to this case, the Second Circuit engaged in an extended discussion of "damages" under New York law.  In the Circuit's view, decisions regarding damages "have sometimes lacked precision." Id. at 245.  "More specifically, courts sometimes conflate the concept of 'damage' (harm suffered) and 'damages' (compensation for harm suffered)." Id. "Damage" is an element of a claim, while "damages" are the remedy.  See id. at 245–46.  "[I]n most cases, the two concepts overlap entirely." Id. at 246.  "[T]he easiest way for a plaintiff to prove that she suffered 'damage' will often be to show that she incurred compensable damages. Indeed, if a plaintiff shows that she suffered an out-of-pocket loss, she has proved both that she suffered 'damage" and 'damages.'" Id.  Yet the two concepts remain "analytically distinct," and "that distinction becomes important" when a case involves nominal damages. Id.  Specifically, "nominal damages cannot satisfy the 'damage' element of a tort that requires actual harm, but when the 'damage' element is otherwise established and the plaintiff is not entitled to compensable damages . . . nominal damages are available [as a remedy]." Id.

Based on Yukos, plaintiffs now seek to use "economic harm" – i.e., pecuniary loss – to establish the "damage" element of their claims.  Defendants concede that this harm is sufficient, but they argue that plaintiffs have waived their opportunity to introduce evidence to show it. According to defendants, the waiver occurred in plaintiffs' response to the motions in limine, when plaintiffs insisted that they were seeking only non-economic damages.

As a matter of New York law, that statement did not limit plaintiffs to establishing the damage element through non-economic harm.  True, plaintiffs' have limited their recovery to non-economic "damages."  But it does not quite follow that plaintiffs also limited themselves to proving non-economic "damage."  This is so because waiver of an element precludes recovery, but it does not always work the other way around.

6

Yukos offers an example.  The plaintiffs' decided not to seek "compensatory damages,"

but the Second Circuit held that compensation could still establish "damage."  Id. at 241.  The

import is that a plaintiff can use a harm to establish "damage" even if the plaintiff does not seek

to recover "damages" that correspond to that harm.

## II.    Preclusion of a New Theory of Damage and Damages

The main problem for plaintiffs is not New York law, but the Federal Rules of Civil

Procedure.  Under Rule 26, a party must "provide . . . a computation of each category of

damages claimed," "make available for inspection and copying . . .  the documents or other

evidentiary material . . . on which each computation [was] based," and "supplement or correct"

those disclosures on a timely basis.  Fed. R. Civ. P. 26(a)(1)(A)(iii), (e).  This rule also requires a

party to disclose its theory of damages.  See, e.g., Austrian Airlines Oesterreichische Lufverkehrs

Ag v. UT Fin. Corp., No. 04-cv-3854, 2005 WL 977850, at *2 (S.D.N.Y. Apr. 28, 2005).

The failure to disclose a theory can carry harsh consequences.  Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by
> Rule 26(a) or (e), the party is not allowed to use that information or witness to
> supply evidence on a motion, at a hearing, or at a trial, unless the failure was
> substantially justified or is harmless.  In addition to or instead of this sanction, the
> court, on motion and after giving an opportunity to be heard:
>
> (A) may order payment of the reasonable expenses, including attorney's fees,
> caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in
> Rule 37(b)(2)(A)(i)—(vi).

"[C]ase law supports application of [Rule 37] to failure to disclose damage theories in the

Rule 26(a)(1)(C) initial disclosure."  Austrian Airlines, 2005 WL 977850, at *2 (collecting

cases).  Accordingly, courts have precluded plaintiffs from asserting damages theories that were

not disclosed in a timely manner.  See 24/7 Records, Inc. v. Sony Music Entm't, Inc., 566 F.

7

Supp. 2d 305, 318 (S.D.N.Y. 2008); Point Prods. A.G. v. Sony Music Entm't, Inc., No. 93-cv-4001, 2002 WL 31856951, at *4 (S.D.N.Y. Dec. 19, 2002); ESPN, Inc. v. Office of Com'r of Baseball, 76 F. Supp. 2d 416, 420 n.3 (S.D.N.Y. 1999).

Although "preclusion of evidence is a harsh remedy," a district court has "broad discretion to determine the nature of any sanction that should be imposed under Rule 37." Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012) (quotations omitted). When determining the appropriate sanction, courts generally consider "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Design Strategy, Inc. v. Davis, 469 F.3d 284, 296 (2d Cir. 2006) (quoting Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)); see also Point Prods., 2002 WL 31856951, at *3–4 (applying the factors governing leave to amend in deciding that a plaintiff could not assert a new damages theory).[2]

Having considered these factors, I conclude that preclusion is appropriate in this case. Plaintiffs have never offered any explanation for their failure to make their disclosures under Rule 26 or respond to defendants' requests under Rule 34. Moreover, plaintiffs conducted discovery on their now-disclaimed assumption that "damage" was synonymous with "damages,"

---

[2] Although a court typically does not impose discovery sanctions in a summary judgment order, the one under reconsideration is inextricably intertwined with the orders on the motions in limine. When I decided not to impose Rule 37 sanctions in the November 30, 2018 order, I did so based on the effective withdrawal of defendants' request to preclude evidence of damages which, in turn, was based on plaintiffs' insistence that they were seeking only non-economic damages. Now that plaintiffs have changed their theory, it is appropriate to reexamine the decision regarding Rule 37 sanctions. I have the power to do so in this instance because a district court "possesses the inherent authority to sua sponte reconsider its own interlocutory orders before they become final." Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC, No. 11-cv-3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015); see also Fed. R. Civ. P. 54(b).

leading defendants (and the Court) to believe that they would seek to recover only non-economic damages, presumably based on proof of non-economic damage.

The original theory appeared in response to the first motion *in limine*.  Seeking to excuse their failure to comply with Rule 26 and Rule 34, plaintiffs claimed that their damages were "not amenable to computation" because they were "largely for physical and emotional pain and suffering."  Plaintiffs then stated that they would seek "damages for non-economic losses":

> There is no question that such damages are available for the claims asserted by [p]laintiffs (first claim – fraud; second claim – assault and battery; third claim – false imprisonment; fourth claim – intentional infliction of emotional distress; eighth claim – conversion of [p]laintiffs' personal property; ninth claim – prima facie tort.  Although economic damages are also available for [p]laintiffs' fifth, sixth and seventh causes of action (tortious interference with contractual relationships, tortious interference with prospective economic advantage, and conversion of plaintiffs' ownership interest in Belneftekhim) [sic].  Plaintiffs will seek only non-economic damages.

For support, plaintiffs pointed to a series of cases explaining that "federal and state courts have long acknowledged that, in contrast to economic damages, awards for pain and suffering do not lend themselves as easily to computation."  Saladino v. Stewart & Stevenson Servs., Inc., No. 01-cv-7644, 2011 WL 284476, at *3 (E.D.N.Y. Jan. 26, 2011) (quotation omitted), aff'd., 500 F. App'x 69 (2d Cir. 2012).

In response to the second motion *in limine*, plaintiffs doubled down on their argument that these claims allow for recovery of non-economic damages.  Plaintiffs never suggested that they would seek nominal damages.  Nor did they differentiate between "damage" and "damages," much less explain that they would use economic harm to establish the damage element and would then seek to recover nominal or non-economic damages.

Nevertheless, when opposing the motion for summary judgment, plaintiffs advanced this theory for the first time.  "Even if [p]laintiffs waived *recovery* of pecuniary damages," they argued, "that [waiver] does not preclude [p]laintiffs from demonstrating that they *sustained*

9

pecuniary damages." They continued: "To the extent any of [p]laintiffs' . . . claims for relief allow recovery only for pecuniary loss, dismissal of is [sic] inappropriate since [p]laintiffs are seeking an award of nominal damages – which is sufficient to sustain each of [p]laintiffs' claims. . . . To the extent pecuniary loss is an essential element of any of [p]laintiffs' claims, dismissal is also inappropriate." Plaintiffs advanced the same argument in their motion for reconsideration, but this time, they specified the harm that could satisfy the "damage" element.

Although this theory is consistent with Yukos, that case does not excuse plaintiffs' failure to disclose the theory, for Yukos is merely an intervening decision, not an intervening change in law. The Second Circuit lacks the power to "change" New York law; it applies state law, and "[w]here the substantive law of the forum state is uncertain or ambiguous, the job of the federal court[] is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." Yukos, 977 F.3d at 241 (quotation omitted). Accordingly, the distinction between "damage" and "damages" derives from state decisions. And based on those decisions, plaintiffs could have argued, at an earlier stage of litigation, that they would use economic harm to establish "damage" even though they did not seek to recover "damages" based on that harm. Yet plaintiffs assumed that the two were intertwined, and they structured their initial disclosures and discovery responses accordingly.

Reversing course would prejudice defendants. Granted, defendants did not need a computation to determine whether plaintiffs have sustained damage; the claims do not require a set amount of damage. But defendants did need to know the theory of damage. See, e.g., Austrian Airlines, 2005 WL 977850, at *2. For instance, plaintiffs now point to the expenses they incurred while traveling to London, and in their reply memorandum, plaintiffs claim to have disclosed these expenses in an attachment to a set of interrogatories. But the attachment is

10

merely an itinerary for their travel, and plaintiffs offered it in response to an interrogatory addressing their whereabouts leading up to the alleged kidnapping.  The itinerary did not suggest that plaintiffs would use their travel expenses to establish the damage element.  Similarly, plaintiffs claim that they suffered damage because they could not "earn a living" while held captive, yet plaintiffs never advanced this theory until they moved for reconsideration.  By that time, discovery had long since closed, and defendants had lost their opportunity to probe the adequacy of this theory.

This is the type of prejudice that Rule 26 seeks to prevent.  Mandatory disclosures serve "to notify the parties of the claims each party intends to pursue, the individuals who may have relevant information, the documents to support those claims, and a computation of the damages sought, so that the parties can adequately prepare for trial."  Kodak Graphic Commc'ns Canada Co. v. E.I. Du Pont de Nemours & Co., No. 08-cv-6553, 2013 WL 5739041, at *2 (W.D.N.Y. Oct. 22, 2013).  In short, the rule seeks to prevent "sandbagging."  Greifman v. Grossman & Karaszewski, PLLC, No. 19-cv-04625, 2020 WL 1659750, at *1 (S.D.N.Y. Apr. 3, 2020) (quotation omitted).  Plaintiffs cannot "assert this new, additional damage theory at the eleventh hour."  Austrian Airlines, 2005 WL 977850, at *2.

Therefore, I will limit the theories and evidence that plaintiffs can use to establish "damage" and "damages."  First, if plaintiffs are to establish the damage element of their claims, they must do so through evidence of non-economic harm.  Second, plaintiffs may recover only non-economic damages.  Plaintiffs may not use economic harm to establish "damage," and they may not recover nominal damages.  These limitations foreclose certain claims, because not every claim allows non-economic harm to satisfy the damage element, and not every claim allows a

plaintiff to recover non-economic damages.  Because these issues require a claim-specific analysis, I will address each claim in turn.

### III.    Reconsideration of Each Claim

#### A.    The Fraud Claims

Non-economic harm cannot satisfy the damage element of fraud.  As courts in New York have long held, "[t]he damages incurred by reason of the fraudulent conduct must be actual pecuniary loss." Woods v. Sieger, Ross & Aguire, LLC, No. 11-cv-5698, 2012 WL 1811628, at *8 (S.D.N.Y. May 18, 2012) (citing Pope v. Saget, 29 A.D.3d 437, 441, 817 N.Y.S.2d 1, 4 (1st Dep't 2006)).  The corollary is that a plaintiff "fails to state a plausible fraud claim" by "claim[ing] only mental or emotional injuries." Passiglia v. Northwell Health, Inc., 252 F. Supp. 3d 129, 140 (E.D.N.Y. 2017) (collecting cases).

 For contrary authority, plaintiffs once again point to Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc., 88 A.D.2d 461, 453 N.Y.S.2d 750 (2nd Dep't 1982).  Although it suggests that nominal damages can satisfy the damage element, the case is not binding, Yukos did not cite it, and I already concluded that it was not an accurate statement of New York law. Instead, I thought the First Department got it right in Connaughton v. Chipotle Mexican Grill, Inc., 135 A.D.3d 535, 23 N.Y.S.3d 216 (1st Dep't 2016), aff'd, 29 N.Y.3d 137, 53 N.Y.S.3d 598 (2017).  See Funk, 2020 WL 5645190, at *2 (summary judgment order).  As Yukos explained, Connaughton "stands for the proposition that nominal damages may not satisfy the 'damage' element of a tort that requires actual harm." Yukos, 977 F.3d at 244.  Therefore, I cannot vacate the grant of summary judgment on plaintiffs' fraud claim.

#### B.    The Prima Facie Tort Claims

This claim fares no better.  It requires "special damages" (or as Yukos would put it, "special damage"), which in turn requires "the loss of something having economic or pecuniary

12

value." Berland v. Chi, 142 A.D.3d 1121, 1123, 38 N.Y.S.3d 57, 59 (2nd Dep't 2016).

"Alleging merely general damages for non-economic loss is insufficient." Carlson v. Geneva

City Sch. Dist., 679 F. Supp. 2d 355, 372 (W.D.N.Y. 2010) (quoting Epifani v. Johnson, 65

A.D.3d 224, 233, 882 N.Y.S.2d 234, 242 (2d Dep't 2009)).  The same goes for allegations that

"generally amount[] to a claim of emotional distress."  Berland, 142 A.D.3d at 1123, 38

N.Y.S.3d at 59; see also Freihofer v. Hearst Corp., 65 N.Y.2d 135, 143, 490 N.Y.S.2d 735, 741

(1985).

      None of plaintiffs' sources suggest otherwise.  Plaintiffs claim that "special damages" are

synonymous with "consequential damages," but they derive this rule from cases addressing

contract remedies.  See Schonfeld v Hilliard, 218 F3d 164, 175 (2d Cir 2000) (citing 3 Dan B.

Dobbs, Dobbs Law of Remedies § 12.2(3) (2d ed. 1993)).  Plaintiffs also cite Kerman v. City of

New York, 374 F.3d 93 (2d Cir. 2004), for the idea that "[i]tems of 'special damage' commonly

include 'physical discomfort, shock, or injury to health.'"  Id. at 125 (quoting Charles T.

McCormick, Handbook on the Law of Damages § 107, at 375–77 (1935)).  Yet this language

addresses remedies for false imprisonment, a tort for which "it is not necessary that any damage

result from it other than the confinement itself."  Id. (quoting William Lloyd Prosser & W. Page

Keeton, The Law of Torts §11, at 48 (5th ed. 1984)).  Those sources do not establish that non-

economic harm constitutes "special damages" for purposes of *prima facie* tort.  Therefore, I will

not revisit the grant of summary judgment as to this claim.

     **C.**    **The Conversion Claims**

      Plaintiffs have asserted two claims for conversion.  The first is for the conversion of

certain personal property, including jewelry, computer equipment, and a Rolex watch.  The

second claim concerns an "ownership interest" in Belneftekhim.  Unlike the other claims at

issue, conversion does not have a discrete "damage" element.  It traditionally requires "the

unauthorized assumption and exercise of the right of ownership over goods belonging to another

to the exclusion of the owner's rights." Thyroff v. Nationwide Mut. Ins. Co., 8 N.Y.3d 283,

288–89, 832 N.Y.S.2d 873, 876 (2007) (quotation omitted).

Nevertheless, plaintiffs may not recover "damages" for this claim.  As I explained in the

summary judgment order, "[t]he usual measure of damages for conversion is the value of the

property at the time and place of conversion, plus interest." Funk, 2020 WL 5645190, at *5

(quoting Fantis Foods v. Standard Importing Co., 49 N.Y.2d 317, 326, 425 N.Y.S.2d 783, 786

(1980)).  I have already precluded plaintiffs from recovering that type of damages for the

personal property claim, based on plaintiffs' failure to disclose the value of that property.  Funk,

2018 WL 11169575, at *1.  Plaintiffs have also failed to disclose the value of the ownership

interest; when opposing the motion for summary judgment, they argued that the interest "is

susceptible to calculation only by [d]efendants."[3]  Given this failure to disclose, I will preclude

plaintiffs from recovering damages based on the value of the ownership interest.

Moreover, plaintiffs may not recover nominal damages or non-economic damages.

Although the Second Circuit has suggested that a plaintiff can recover nominal damages for

conversion, Colavito v. N.Y. Organ Donor Network, Inc., 438 F.3d 214, 232 (2d Cir. 2006), I

have precluded plaintiffs from seeking nominal damages in light of their failure to disclose this

theory.  Further, I have concluded that non-economic damages are not available for a conversion

claim.  Funk, 2020 WL 5645190, at *5.  Therefore, plaintiffs have no theory of damages that

remains available, so I will not revisit the grant of summary judgment on the two conversion

claims.

---

[3] There was simply no basis for plaintiffs' argument.  It happens all that time stock in a corporation is valued by an expert based on the corporation's financial records and other information.  Nothing stopped plaintiffs from asking for those records on the ground that plaintiffs needed them to value their interest in the converted shares.

### D.      The Tortious Interference Claims

The Second Circuit has recognized that non-economic harm qualifies as "damage" for purposes of tortious interference with contract.  In <u>Rich v. Fox News Network, LLC</u>, 939 F.3d 112 (2d Cir. 2019), two parents alleged that the defendants inducted a private investigator to disclose confidential information about their son's murder, in breach of the investigator's contract with the parents.  As a result, the parents alleged, they began "exhibiting symptoms of post-traumatic stress disorder and social anxiety disorder."  <u>Id.</u> at 120.  The Second Circuit rejected the district court's conclusion that this "emotional injury" did not qualify as damage.  <u>Id.</u> at 121.  Then, quoting the Restatement (Second) of Torts § 774A(1) (1979), the Second Circuit explained that "[o]ne who is liable to another for interference with a contract . . . is liable for damages for . . . emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference."  <u>Rich</u>, 939 F.3d at 128.  These passages make clear that non-economic harm can constitute "damage," and that a plaintiff may recover "damages" for that harm, for a claim for tortious interference with contract under New York law.  There is no reason to think that a different rule would apply to tortious interference with prospective economic advantage.

Although defendants put forth various other reasons for granting summary judgment on these claims, defendants have waived those arguments.  For instance, defendants argue that tortious interference with contract "requires proof that the plaintiff had a contract with a third person, and that the defendant caused the third person to breach that contract."  Defendants then assert that the record "contains no evidence" that the "third person" in this case, an unidentified client group, breached the contract.  But this argument never appeared in the original motion for summary judgment, and reconsideration "may not be used to advance new facts, issues or arguments not previously presented to the Court."  <u>Davidson v. Scully</u>, 172 F. Supp. 2d 458, 461

(S.D.N.Y. 2001).  Defendants have not offered any justification for the untimeliness of these arguments.

Moreover, defendants now appeal to the record, but when moving for summary judgment, they disclaimed any reliance on the record.  They excused themselves from having to comply with Local Rule 56.1, which requires the moving party to submit a statement of the undisputed material facts.  Defendants then proclaimed that their motion "turn[ed] entirely on the legal consequences of a single concession made by [p]laintiffs, in a single document on file, . . . in which [p]laintiffs disclaim recovery of pecuniary damages."  Having failed to do the hard work of putting the undisputed facts before the Court, defendants cannot now venture beyond the consequences of plaintiffs' concession.  Because that concession did not defeat plaintiffs' ability to establish "damage" or recover "damages" for these two claims, the grant of summary judgment is vacated.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for reconsideration [349] is granted in part. That portion of the Summary Judgment Order granting summary judgment on the claims for tortious interference with contract and tortious interference with prospective economic advantage is vacated.  Reconsideration is denied as to summary judgment on the claims for fraud, *prima facie* tort, and conversion.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____

U.S.D.J.

Dated: Brooklyn, New York
      December 22, 2020

16
